## STATE OF NORTH DAKOTA v. ROGNHILD SOGGE, Elmer Jones, and Betsy Jones.

#### (161 N. W. 1022.)

**Corpus delicti — homicide cases — meaning of — body of the crime — component parts — death — criminal agency.**

1. The expression *corpus delicti*, as understood in cases of homicide, means the body of the crime, and consists of two component parts, the first of which is the death of the person alleged to have been killed, and the second, that such death was caused through criminal agency.

**Statutes — murder — manslaughter — death of person — fact of killing — independent facts — former by direct proof — latter beyond a reasonable doubt — "direct evidence."**

2. Section 9459, Compiled Laws of 1913, which provides that no person can

---

Note.—On proof of *corpus delicti* in criminal case, see extensive note in 68 L.R.A. 33.

On sufficiency of circumstantial evidence to identify remains found as those of person charged to have been killed, see note in 7 L.R.A. (N.S.) 181.

On the definition of *corpus delicti*, and general principles of law respecting the same, see note in 78 Am. St. Rep. 252.

be convicted of murder or manslaughter unless the death of the person alleged to have been killed and the fact of the killing are each established as independent facts, the former by direct proof and the latter beyond a reasonable doubt, construed, and held that the legislature used the words "direct proof" as the equivalent of, and a synonym for "direct evidence."

Corpus delicti — evidence — proof of — established.

3. Evidence examined and *held* that the court cannot say as a matter of law that the *corpus delicti* has not been established.

Instructions — jury — circumstantial evidence — verdict — sufficient to support verdict of guilty — direct evidence — distinction — prejudicial error.

4. It is held for reasons stated in the opinion that the giving of the following instruction constituted prejudicial error: "Circumstantial evidence alone is enough to support the verdict of guilty of any crime, providing the jury believe beyond a reasonable doubt that the accused is guilty under the evidence. *No greater degree of certainty in proof is required where the evidence is all circumstantial than where it is direct,* for in either case the jury must be convinced of the prisoner's guilt beyond a reasonable doubt. The evidence of circumstances is to be taken by you the same as evidence of direct and positive acts. It is to be received by you in the light of reason,—in the light of actual results. All evidence is more or less circumstantial, all statements of witnesses, all conclusions of jurors, are the results of inference. There is no ground of distinction between circumstantial and direct evidence."

Opinion filed April 2, 1917.

Appeal from District Court, Towner County, *C. W. Buttz, J.*

Defendants were convicted of manslaughter and from the judgment of conviction and from the order denying a new trial, they appeal.

Reversed.

*Torger Sinness, Clyde Duffy,* and *Victor Wardrope,* for appellants.

The first consideration in every criminal case is the *corpus delicti.* In homicide this consists of the death of the person claimed to have been killed and the criminal agency. The next consideration is the connection of the defendant with the crime. The first must be established by direct evidence, and the latter by direct or circumstantial evidence to the satisfaction of the jury beyond a reasonable doubt. Campbell v. People, 159 Ill. 9, 50 Am. St. Rep. 134, 42 N. E. 123; People v. Benham, 160 N. Y. 402, 55 N. E. 11.

Upon a plea of not guilty the confession or admission of the accused, in writing or otherwise, shall in no case be admissible to establish the

death of the person alleged to have been killed.   Comp. Laws, 1913, § 9459; People v. Benham, supra; State v. Pepo, 23 Mont. 473, 59 Pac. 721.

In fact, confessions or admissions are not admissible to establish either element of the *corpus delicti*.   People v. Tapia, 131 Cal. 647, 63 Pac. 1001; Bradford v. State, 104 Ala. 68, 53 Am. St. Rep. 24, 16 So. 107; Conde v. State, 35 Tex. Crim. Rep. 98, 60 Am. St. Rep. 22, 34 S. W. 286; Bines v. State, 68 L.R.A. 75, note.

It is not sufficient merely to prove the finding of a dead body; it must be shown that it was the body of a human being.   State v. Barnes, 47 Or. 593, 7 L.R.A.(N.S.) 181, 85 Pac. 998; Com. v. Webster, 5 Cush. 295, 52 Am. Dec. 722; 2 Bishop, Crim. Law, § 632; Jones, Ev. Pocket ed. p. 5; 1 Whart. Crim. Ev. § 27; State v. Williams, 78 Am. Dec. 257, note.

When opinion evidence is given, we must consider the facts upon which it is based.   If the facts are such as to repudiate or fail to sustain the opinion evidence, then such evidence must be disregarded. Chybowski v. Bucyrus Co. 7 L.R.A.(N.S.) 357, note; Fleming v. Northern Tissue Paper Mill, 15 L.R.A.(N.S.) 701, note.

Any person present at a post mortem examination may testify as to what he saw, and competent experts may give opinions based on the facts so ascertained.   Wharton, Crim. Ev. §§ 421, 422; Self v. State, 90 Miss. 58, 12 L.R.A.(N.S.) 238, 43 So. 945.

In a murder case, where the charge was that the crime was committed by means of morphine, and the defense showed by expert testimony that the symptoms in uremic poisoning were almost the same, and there was a failure to examine the contents of the stomach and bowels, and no direct proof of poisoning, it was held that the jury was not warranted in convicting.   State v. Nesenhener, 164 Mo. 461, 65 S. W. 230.

The same doctrine has been followed in many other jurisdictions. Pitts v. State, 43 Miss. 472; Conde v. State, 35 Tex. Crim. Rep. 98, 60 Am. St. Rep. 22, 16 So. 107; Sheppard v. State, 17 Tex. App. 74; Com. v. O'Donohue, 8 Phila. 623; Bines v. State, 68 L.R.A. 48 note, Rex v. Poulton, 5 Car. & P. 329; Rex v. Crutchley, 7 Car. & P. 814; Rex v. Sellis, 7 Car. & P. 850; Lee v. State, 76 Ga. 498; Harris v. State, 30 Tex. App. 549, 17 S. W. 1110; Bines v. State, 118 Ga. 320, 68 L.R.A. 33, 45 S. E. 376, 12 Am. Crim. Rep. 205.

The alleged confessions of defendants should never have been received in evidence. They were not the voluntary statements of the defendants, —statements induced by guilty consciences.

They were obtained by cross-examination of defendants by the state's attorney in the presence of the assistant state's attorney, the sheriff, and his deputies. 2 Whart. Crim. Ev. 1317.

The evidence on this subject shows clearly that the questions asked of the defendant Betsy Jones assumed facts which would go to her guilt, called for an affirmative answer on her part, which, in her excitement and ignorance and fright, she gave. Such answers to such questions are distorted into a "confession" or admission of guilt. None of defendants ever, even under such a system of examination, admitted the child was alive, that they knew it was left to die, or that they killed the child. On the contrary, they protested their innocence. Statements favorable to the accused are entitled to just as much weight as are statements against their interests, if a part of the same statement or so-called confession. 2 Whart. Crim. Ev. 1371; Burnett v. People, 204 Ill. 208, 66 L.R.A. 304, 98 Am. St. Rep. 206, 68 N. E. 505; 3 Brickwood's Sackett, Instructions to Juries, 2515, 2521.

In the absence of a conspiracy, one who is present when a homicide is committed by another, upon a sudden quarrel or in the heat of passion, is not guilty of aiding or abetting the homicide, although he may be involved in an independent fight with others of the party of the deceased, unless he does some overt act with a view to produce that result or purposely incites or encourages the principal to do the act.

One mentally consenting to the commission of a crime, where no express consent either by word or act is given, does not render him guilty of any offense. The defendant Sogge had no part in the crime, if one was committed. Woolweaver v. State, 50 Ohio St. 277, 34 N. E. 352, 40 Am. St. Rep. 667, note; State v. Douglass, 44 Kan. 618, 26 Pac. 476; Clem v. State, 33 Ind. 418; State v. Cox, 65 Mo. 29; White v. People, 81 Ill. 333; 1 Whart. Crim. Law, § 211; State v. Hildreth, 31 N. C. (9 Ired. L.) 440, 51 Am. Dec. 370; State v. Noakes, 70 Vt. 247, 61 L.R.A. 290, 40 Atl. 249.

In cases of this character, where physicians or others are called as expert witnesses, and have propounded to them hypothetical questions, such questions should be strictly confined to the evidence already in, and

should embrace all the facts covered thereby relating to the point under consideration; and the answers should also be thus confined and restricted, and no such witness should base his answers in any part upon things heard outside of court.

The cross-examination of doctor Bussen clearly showed that he was basing his answers to such questions on matters of hearsay. Whart. Crim. Ev. 853; Manufacturers' Acci. Indemnity Co. v. Dorgan, 22 L.R.A. 620, 7 C. C. A. 581, 16 U. S. App. 290, 58 Fed. 945; Kerr v. Lunsford, 31 W. Va. 659, 2 L.R.A. 668, 8 S. E. 493.

The so-called confession by Betsy was elicited from her, under cross-examination by the state's attorney, in presence of other officers. She was but sixteen years of age. She was ignorant. She was frightened and much excited. She did not understand much he said to her. She was compelled to talk against her will.

"No person shall be compelled in any criminal case to be a witness against himself." N. D. Const. art. 1, § 13; State v. Height, 117 Iowa, 650, 5 L.R.A. 437, 9 Am. St. Rep. 323, 91 N. W. 935; Green v. State, 88 Ga. 516, 30 Am. St. Rep. 167, 15 S. E. 10; State v. Montgomery, 26 S. D. 539, 128 N. W. 718; 1 Greenl. Ev. p. 220; Daniels v. State, 6 Am. St. Rep. 242, note; Ammons v. State, 18 L.R.A.(N.S.) 786, 796, note, and cases cited; Ellis v. State, 65 Miss. 44, 7 Am. St. Rep. 634, 3 So. 188; Cunningham v. Baker, 53 Am. St. Rep. 26, note; Bank of North America v. Rindge, 26 Am. St. Rep. 242, note; 1 Bishop, Crim. Law, p. 1232; Lauderdale v. State, 37 Am. St. Rep. 793, note; Hopt v. People, 28 L. ed. 262, note; Thornton v. State, 117 Wis. 338, 98 Am. St. Rep. 926, 93 N. W. 1107; State v. Revells, 34 La. Ann. 381, 44 Am. Rep. 436; State v. Allison, 24 S. D. 622, 124 N. W. 747; Bram v. United States, 168 U. S. 532, 42 L. ed. 568, 18 Sup. Ct. Rep. 183, 10 Am. Crim. Rep. 547.

The trial court charged that "the evidence of circumstances is to be taken by you the same as evidence of direct and positive acts." Again, "all evidence is more or less circumstantial; all statements of witnesses, all conclusions of jurors, are the results of inference. There is no ground of distinction between circumstantial and direct evidence." Such instructions are directly in conflict with the provisions of our statutes, and the decisions of our courts, as well as of other courts. Territory v. Egan, 3 Dak. 119, 13 N. W. 568; Dak. Penal Code, 1877, § 239;

Territory v. Bannigan, 1 Dak. 451, 46 N. W. 597; State v. Montgomery, 9 N. D. 405, 83 N. W. 873; People v. Bemmerly, 87 Cal. 117, 25 Pac. 266; Palmerston v. Territory, 3 Wyo. 333, 23 Pac. 73; Lovett v. State, 30 Fla. 142, 17 L.R.A. 705, 11 So. 550; Burt v. State, 48 Am. St. Rep. 576, note.

Where a woman is charged with killing her new-born child by neglect or improper care, it is not sufficient to show that she purposely planned to be unattended at the time of its birth, but evidence must be given of neglect towards the child after its birth. Rex v. Izod, 20 Cox, C. C. 690; Rex v. Lewis, 1 B. R. C. 750, note.

Defendants made request for the following instruction: "Before either of these defendants can be convicted of any crime charged in the information it must be proved to your satisfaction beyond a reasonable doubt that such defendant knew the felonious purpose of the defendant Betsy Jones, if there was such felonious purpose. It must be proved to your satisfaction beyond a reasonable doubt that such defendant did some act or spoke some word showing his or her consent to the commission of the crime charged. It must appear to your satisfaction beyond a reasonable doubt that such defendant by some sign, word, or act, contributed to the commission of the offense charged." The court refused to give this instruction, and we believe this refusal was error. Hicks v. United States, 150 U. S. 442, 37 L. ed. 1137, 14 Sup. Ct. Rep. 144; Brooks v. State, 128 Ga. 261, 12 L.R.A.(N.S.) 889, 57 S. E. 483; Com. v. Knapp, 9 Pick. 496, 20 Am. Dec. 491; Burnett v. People, 204 Ill. 208, 66 L.R.A. 304, 98 Am. St. Rep. 206, 68 N. E. 505; State v. Hildreth, 51 Am. Dec. 369, and note, 31 N. C. (9 Ired. L.) 440; Woolweaver v. State, 40 Am. St. Rep. 667, and note, 50 Ohio St. 277, 34 N. E. 352; People v. Woodward, 45 Cal. 293, 13 Am. Rep. 176.

"Aside from the person who actually commits the crime, no person could, under the statute, be guilty of the crime who does not aid and abet in it; and a person may aid in it by unconsciously, and therefore innocently, doing some act essential to its accomplishment, and yet have no felonious intent or purpose." State v. Allen, 34 Mont. 403, 87 Pac. 182; State v. Corcoran, 7 Idaho, 220, 61 Pa. 1034; State v. Empey, 79 Iowa, 460, 44 N. W. 707.

Where insinuations are made to persons concerning their connection with a crime alleged to have been committed, and such persons remain

silent and do not enter a denial, before such can be proved against them, it must appear that the statements were a direct accusation against them or such a statement as would naturally call for a denial. Neither of these elements appears in this case. 1 Whart. Crim. Ev. § 262; 2 Whart. Crim. Ev. § 680; Com. v. Harwood, 4 Gray, 41, 64 Am. Dec. 49; State v. Moeller, 20 N. D. 114, 126 N. W. 568; State v. Davidson, 9 S. D. 564, 70 N. W. 879; Felder v. State, 23 Tex. App. 477, 59 Am. Rep. 777, 5 S. W. 145.

The state should not be permitted to cross-examine its own witnesses. State v. Hazlett, 14 N. D. 490, 105 N. W. 617.

*T. H. Burke,* State's Attorney, *E. T. Burke, Wm. Langer,* Attorney General, and *D. V. Brennan,* Assistant Attorney General, for respondent.

Medical books are not evidence in a criminal case. State v. Brunnette, 28 N. D. 539, 150 N. W. 271, Ann. Cas. 1916E, 340.

Proof is the effect or result of evidence, while evidence is the medium of proof. Jones, Ev. § 4.

The only difference between positive and circumstantial evidence is that the former is more immediate and has fewer links in the chain of connection between the premises and the conclusion. No human testimony is superior to doubt. Com. v. Harman, 4 Pa. 269; Ruloff v. People, 18 N. Y. 182.

Where the death of a human being was proved by the identification of certain teeth and charred bones in a river near the point where the body was burned, and there was circumstantial evidence to prove the identity of the deceased, it was held that the evidence was sufficient to satisfy the law, requiring that the death of a person alleged to have been killed must be established by direct proof as an independent fact. State v. Calder, 23 Mont. 504, 59 Pac. 903; State v. Barnes, 7 L.R.A. (N.S.) 186, note; Buel v. State, 104 Wis. 132, 80 N. W. 81, 15 Am. Crim. Rep. 175; People v. Beckwith, 108 N. Y. 67, 15 N. E. 53.

Proof of life and proof of death are far from being synonymous. It is not necessary that the identity of the deceased be established by direct proof or evidence. People v. Palmer, 109 N. Y. 110, 4 Am. St. Rep. 423, 16 N. E. 529, 7 Am. Crim. Rep. 399; Buel v. State, 104 Wis. 132, 80 N. W. 81, 15 Am. Crim. Rep. 175.

An expert witness may be asked hypothetical questions and asked

to base his answers upon the testimony of a previous witness, assuming the truth of the testimony of such witness. Such was the procedure here, and it was proper. Whart. Crim. Ev. 9th ed. § 418; 5 Enc. Ev. 621; Hunt v. Lowell Gaslight Co. 8 Allen, 169, 85 Am. Dec. 697; Getchell v. Hill, 21 Minn. 464; Omaha & R. Valley R. Co. v. Brady, 39 Neb. 27, 57 N. W. 767; Wright v. Hardy, 22 Wis. 348; Howland v. Oakland Consol. Street R. Co. 110 Cal. 513, 42 Pac. 983.

"What facts the hypothetical question must cover are determined by the sound discretion of the trial judge. 17 Cyc. 244.

The statements of defendants which were introduced in evidence are "admissions," and not "confessions." There is a vast difference between the two. It is not necessary in case of "admissions" to show that they were made voluntarily. Underhill, Crim. Ev. pp. 239, 249, 252, 265.

Even a confession procured from a prisoner by telling him an accomplice had confessed, which statement was untrue, is not, for such reason, inadmissible. State v. Jones, 54 Mo. 481.

The instructions of the court, taken as a whole, informed the jury that they must find from the evidence beyond a reasonable doubt that the defendant acted knowingly and with guilty purpose and intent, and excluded the idea that they could convict because one acted or aided innocently in the perpetration of a crime. While the instructions complained of are in part erroneous, yet no substantial right of defendant was prejudiced. State v. Corcoran, 7 Idaho, 220, 61 Pac. 1042; Hicks v. United States, 150 U. S. 442, 37 L. ed. 1137, 14 Sup. Ct. Rep. 144.

CHRISTIANSON, J. This opinion is written after a reargument. The former opinion was written by the then Chief Justice Fisk. After due consideration we have decided to adopt and reaffirm the following material portions of the former opinion:

"The defendants were jointly charged with the crime of murder, and defendants Rognhild Sogge and Elmer Jones were convicted of manslaughter in the first degree, and the punishment fixed at imprisonment in the penitentiary for the term of five years. Defendant Betsy Jones was convicted of manslaughter in the second degree, and the punishment fixed at confinement in the county jail for the period of one

year. A motion for a new trial was made in behalf of all three defendants upon the grounds:

First. That the court misdirected the jury in matters of law, and has erred in the decision of questions of law arising during the course of the trial, and did and allowed acts in the action prejudicial to the substantial rights of the defendants and each of said defendants.

"Second. That the verdict is contrary to law and clearly against the evidence. Such motion was denied and an appeal taken on behalf of all three defendants, both from the order denying a new trial and from the final judgments of conviction.

"The facts essential to a general understanding of the case are, in brief, as follows: It is and was the state's contention that in October 19, 1914, at a farm home about 12 miles southwest of Minnewaukon in Benson county, defendant, Betsy Jones, then Betsy Sogge, the unmarried daughter of Rognhild Sogge, gave birth to an illegitimate child of which defendant Elmer Jones was the father; that such childbirth was intentionally and feloniously permitted and caused to take place in the water-closet on the farm, and the child dropped or deposited in the vault of such closet by its said mother with the felonious knowledge, consent, and procurement of the other defendants, who aided and abetted such mother in such unlawful acts, and with the felonious design of permitting such infant, which was born alive, to die from exposure and lack of food, clothing, and protection; that by reason thereof such child soon thereafter and on said date died, solely by reason of such abandonment. A dead body of an infant apparently fully developed was thereafter and on December 19, 1914, found in and removed from such privy vault, and the record tends to show that about two months prior thereto Betsy gave birth to a child in such closet. One of the sharply contested questions is whether the infant was born alive, and if so whether the defendants Rognhild Sogge and Elmer Jones, with guilty knowledge and felonious intent, aided and abetted Betsy in the commission of the crime.

"Appellants assign a large number of specifications of error relative to rulings both in the admission and exclusion of testimony, and others unnecessary here to mention, and in giving certain instructions and refusing to give certain requested instructions to the jury. They also

specify numerous particulars wherein they claim that the evidence is insufficient to sustain the convictions.

"Some of the specifications are not argued by appellants and these will, under the well-settled rule of this court, be deemed abandoned, and we will, therefore, notice those specifications only which are argued.

"The first contention of appellants is that the state failed to prove the *corpus delicti*. If such contention is sound, the convictions, of course, cannot stand. This is elementary. It is also elementary law that the expression *corpus delicti*, as understood in homicide cases, means the body of the crime, and consists of two component parts, the first of which is the death of the person alleged to have been killed, and the second that such death was produced through criminal agency. People v. Benham, 160 N. Y. 402, 55 N. E. 11.

"Our Code (Comp. Laws 1913, § 9459) provides that 'no person can be convicted of murder or manslaughter or of aiding suicide, unless the death of the person alleged to have been killed and the fact of the killing by the accused as alleged are each established as independent facts; the former by direct proof and the latter beyond a reasonable doubt; but in no case upon a plea of not guilty, shall the confession or admission of the accused, in writing or otherwise, be admissible to establish the death of the person alleged to have been killed.'

"Appellants strenuously assert that the state has wholly failed to establish by direct proof the essential fact that this infant was born alive. They argue that the finding of the dead body of such infant, supplemented merely by *circumstantial* evidence that it lived after it was born, will not satisfy the statute above quoted. Appellants say there is no *direct* proof that the body was ever that of a living human being, and that the most that has been shown in this case are 'circumstances from which life and death may be inferred by the physicians.' What meaning did the legislature intend should be given to the words 'direct' proof as employed in § 9459? Was it intended, as appellants seem to assume, that the expression 'direct proof' as employed in the Code should be construed as the equivalent of 'direct evidence?' The two terms have often been defined by the courts, and a distinction between 'direct proof' and 'direct evidence' pointed out. The terms 'evidence' and 'proof' in the strict legal sense differ materially. 'Evi-

dence' is said to be the medium of proof, while 'proof' is defined as the effect or result of evidence. 1 Jones, Ev. § 3 (pocket ed). See also 16 Cyc. 849, C. In the popular sense *proof* 'more often refers to the degree or kind of evidence which will produce full conviction, or establish the proposition to the satisfaction of the tribunal.' 1 Jones, Ev. § 3. We are inclined to the view that the legislature intended to use the term 'direct proof' in the popular sense and as the equivalent of 'direct evidence,' but, however this may be, we are satisfied that direct proof of the finding of the dead body of this infant, as testified to, satisfied the statute. .. . . There is persuasive proof of the fact that this child must have been born alive and lived for at least several hours. We shall not attempt to narrate in this opinion the great mass of testimony on this point contained in the very voluminous record before us, but will content ourselves by a brief reference thereto.

"Dr. Warren testified that the lungs were filled with air; that they possessed the color of the lungs of a child rather than a fetus; that the pulmonary arteries were enlarged; that fetal circulation had ceased and natural circulation commenced; that the child was a full term child, normal and capable of independent life. . . . He also testified positively that the congestion in the lungs could take place only in a living being; that it could not take place after death, nor before live birth. This evidence was corroborated by Dr. Bussen and Crawford, and was admitted by the defendants' expert, Dr. Roberts, who stated that he had hardly thought that the process of congestion would go on after a person died, to the extent found here. The same witness stated that the congestion found by Dr. Warren is evidence to establish the fact that the child was born alive, and that some time must have elapsed after birth for the condition of congestion found in the lungs to have taken place. We are convinced that there is ample proof that the child was born alive and that it lived for at least several hours after birth and died from exposure. . . .

"Certain instructions to the jury are challenged as erroneous and prejudicial. Upon the weight to be given circumstantial evidence the court charged the jury as follows: 'Circumstantial evidence alone is enough to support the verdict of guilty of any crime, providing the jury believe beyond a reasonable doubt that the accused is guilty under the evidence. No greater degree of certainty in proof is required where

the evidence is all circumstantial than where it is direct, for in either case the jury must be convinced of the prisoner's guilt beyond a reasonable doubt. The evidence of circumstances is to be taken by you the same as evidence of direct and positive acts. It is to be received by you in the light of reason,—in the light of actual results. All evidence is more or less circumstantial; all statements of witnesses, all conclusions of jurors, are the results of inference. There is no ground of distinction between circumstantial and direct evidence. The state in this case depends in part on circumstantial evidence. If as to such matters such evidence is of such a character as to exclude every reasonable theory other than that of a defendant's guilt, it is entitled to the same weight as direct testimony.'

"Appellants contend that such instruction is in direct conflict with our Code, § 9459, Comp. Laws, prescribing that the death of the person alleged to have been killed must be established by direct evidence. The statute uses the words 'direct proof' instead of 'direct evidence,' but we do not deem this of any material or controlling significance in this connection. The instruction is, we believe, vicious not only for the reason given, but in our judgment it is erroneous upon other tenable grounds. It starts with the unqualified statement to the effect that a verdict of guilt of any crime may rest alone on circumstantial evidence. Such is clearly not the law in this state in murder or manslaughter cases, as is evidenced in § 9459, supra. The fact that in a prior portion of the charge the substance of such statutory rule was correctly stated does not, as respondent's counsel suggest, remedy the matter. Two wholly inconsistent instructions were given, and we cannot say which the jury followed. In any event the jury might well have been misled thereby in arriving at their verdict. Such instruction clearly infringes upon the province of the jury in that portion wherein it charges that 'the evidence of circumstances is to be taken by you the same as evidence of direct and positive acts.' The jury clearly had the right to say what weight they should give to evidence of circumstances. It is also, we think, erroneous in stating that 'there is no ground of distinction between circumstantial and direct evidence.' These instructions were evidently taken from the opinion in Territory v. Egan, 3 Dak. 119, 13 N. W. 568, but such decision was based upon

36 N. D.—18.

§ 239 of the old Penal Code of 1877, which was subsequently re-enacted with material change as our present § 9459, Comp. Laws 1913."

On the reargument respondent's counsel contends most strenuously that we erred in our construction of § 9459, Comp. Laws, 1913.

He contends that the legislature had in mind the distinction generally recognized to exist between the terms "proof" and "evidence," and intended to prescribe the amount, rather than the kind, of evidence by means of which certain facts must be established; that the legislature did not intend to place any limitations upon the use of circumstantial evidence, or require that the death of the person alleged to have been killed be established by *direct* as distinguished from indirect, or circumstantial, evidence, but that all the legislature intended was to prescribe the degree of proof required, and not the means by which the proof might be established.

In order to consider this proposition more fully we deem it desirable to set forth the section as originally enacted, and the subsequent amendment thereof.

The section appeared in the Penal Code of the territory of Dakota of 1877, in the following language: "No person can be convicted of murder or manslaughter, or of aiding suicide, unless the death of the person alleged to have been killed, and the fact of killing by the accused, are each established as independent facts beyond a reasonable doubt." Penal Code 1877, § 239.

It was subsequently re-enacted and amended to read as follows: "No person can be convicted of murder or manslaughter or of aiding suicide, unless the death of the person alleged to have been killed and the fact of the killing by the accused as alleged, are each established as independent facts; *the former by direct proof and the latter* beyond a reasonable doubt; *but in no case upon a plea of not guilty, shall the confession or admission of the accused, in writing or otherwise, be admissible to establish the death of the person alleged to have been killed.*" Comp. Laws 1913, § 9459. We have italicized the words added by the amendment.

It is true, as asserted by respondent's counsel, and as stated in the former opinion, there is a recognized distinction between the two words "evidence" and "proof." The term "evidence" is construed by text-writers and courts to embrace and include all the means by which

any alleged matter of fact, the truth of which is submitted to investigation, is established or disproved; while the word "proof" is applied to the effect of evidence. In other words, "evidence" is the medium by which truth is established and "proof" is the result or effect created by the evidence. But while this is true, it is equally true that the different text-writers and courts also recognize the fact that these terms are often used as synonymous with each other. Greenl. Ev. § 1; Jones, Ev. § 4; Chamberlayne, Ev. § 4; 16 Cyc. 849; 10 R. C. L. pp. 859, 860; Snowden v. State, 62 Miss. 100–105; State v. Poole, 64 Wash. 47, 116 Pac. 469. See also Githens v. Mount, 64 N. J. L. 166, 44 Atl. 851.

The term "direct proof" as used in the statute, in our opinion, is susceptible of but one construction, and that is that the legislature used the term "proof" as a synonym for "evidence." The history of the rule declared by this statute, the circumstances surrounding its enactment by the legislature of this state, as well as the language used, clearly indicate this to have been the legislative intent. The term "direct evidence" is frequently used by law writers and courts as an antonym of "indirect," or "circumstantial," evidence. 4 Enc. Ev. 644; Chamberlayne, Ev. § 15; 16 Cyc. 848; Jones, Ev. §§ 6 et seq; Whart. Crim. Ev. 10th ed. p. 1632, note, 3 Words & Phrases, 2072; 4 Words & Phrases, 3558; 2 Words & Phrases, 2d series, 48, 1047. The term "direct proof" in this statute clearly refers to the mode or means of establishing a fact. The qualifying word "direct" applies to evidence. It could not very well apply to the effect of evidence.

The history of the doctrine of *corpus delicti* in homicide cases is known to every jurist, and it is neither necessary nor profitable to enter into a discussion thereof in this opinion. It is sufficient to say that the rule was announced by Lord Hale, by which, according to a noted English jurist (Starkie), "the accused shall not be convicted unless the death be first distinctly proved, either by direct evidence of the fact, or by inspection of the body; a rule warranted by melancholy experience of the conviction and execution of supposed offenders, charged with the murder of persons who survived their alleged murderers." Starkie Ev. 4th London ed. 862, 863. The rule was subsequently modified, and, to some extent at least, repudiated. And to-day, in absence of statute, the rule is almost universal that the ingredi-

ents of the *corpus delicti* may be established by circumstantial evidence, provided such evidence is so clear and convincing and of such probative force that it establishes the commission of the crime beyond all reasonable doubt. Section 239, Penal Code 1877, was a statutory declaration of the latter rule, while § 9459, Comp. Laws 1913, is in effect a repudiation thereof, and a re-enactment of the rule declared by Lord Hale. We are aware that the overwhelming weight of modern authority is in accord with the rule announced in § 239, Penal Code 1877, and the court's instructions in this case, but we are not concerned with the weight of authority, as we are confronted by a positive statutory enactment. It is our duty to construe and apply such enactment, and not to formulate a rule of our own. If the rule is wrong, let the statute be repealed or amended. We have no choice but to apply the law as we find it, and to put into effect the rule as the legislature has declared it.

Respondent's counsel calls our attention to the fact that the statute under consideration was taken from the New York Code, and that consequently the construction placed thereon by the New York court of appeals should control. And respondent's counsel contends that the New York court of appeals in People v. Palmer, 109 N. Y. 110, 4 Am. St. Rep. 423, 16 N. E. 529, 7 Am. Crim. Rep. 399, placed a construction upon such statute wholly contrary to that announced in our former, and re-affirmed in the present, decision. An examination of the decision in People v. Palmer wholly fails to bear out respondent's contention. In that case the fact of death was established by the finding of the dead body, and the only question was whether, death having been proved by direct evidence, the identity of the victim must also be established by direct evidence or whether circumstantial evidence might be used for that purpose. The New York court said: "The language of that section contemplates two independent facts, not three nor four. It speaks of them as 'each' and describes them as 'the former' and the 'latter.' *One is to be proved by direct evidence,* the other beyond a reasonable doubt. This language is appropriate and precise, if by the one fact is meant the fact of the death of the person alleged to have been killed, however that identity may be shown, and assuming it to have been established; and by the other, the guilty agency of the prisoner. But the language becomes quite inappropriate

if the meaning is that two facts, the death of the deceased and his identity, are to be established by direct evidence. *It is the one fact that is to be thus proved.* When the person supposed or alleged to be dead is identified, *the fact that such person is actually dead,*—not merely that he has disappeared or cannot be found,—*that vital fact of his death, must be proved by direct evidence.* As the learned district attorney very aptly states it, 'direct proof that somebody is dead becomes direct proof that A B is dead when the body is identified as that of A B.' "

"But the meaning and construction of the section becomes plainer when we observe that if the identity of the deceased is involved in the first fact, treated as a compound fact, requiring direct proof, it is also embraced in the second fact, which is equally a compound fact, and which may be proved by indirect evidence." See also Ruloff v. People, 18 N. Y. 179; People v. Bennett, 49 N. Y. 137; People v. Lagroppo, 90 App. Div. 219, 86 N. Y. Supp. 119.

Respondent's counsel further calls our attention to the fact that the state of Montana also adopted the New York statute without material change, and that the Montana supreme court has placed the construction thereon for which they now contend.

An examination of State v. Pepo, 23 Mont. 473, 481, 482, 59 Pac. 721, cited by respondent's counsel in support of their contention, discloses that in that case there was direct evidence of the death, and the question under consideration was whether the identity of the victim might be established by circumstantial evidence. The Montana supreme court approved the construction placed upon the statute by the New York court, and concluded "that in prohibiting a conviction of murder or manslaughter unless the death of the person alleged to have been killed, and the fact of killing as alleged, are each established as independent facts (the former by direct proof, and the latter beyond a reasonable doubt), the law does not require direct proof of the identity of the victim, *but only of death.*"

In construing the same statute in the subsequent case of State v. Calder, 23 Mont. 504, 513, 59 Pac. 903, the Montana supreme court said: *"The true meaning of the statute in this respect is that in the proof of the corpus delicti there must be direct evidence establishing the death of a person;* the fact that the decedent is the person alleged

to have been killed may be proved by circumstantial evidence; that is, by inferences drawn from the facts proved; or it may, of course, be established by direct proof; for example, direct proof that somebody is dead becomes direct proof that MacRae is dead whenever by indirect evidence the remains are shown to be MacRae's." Consequently, it will be seen that the authorities relied upon by respondent's counsel are directly contrary to their contentions, and both the New York and Montana courts have held, in the decisions cited by respondent's counsel, that under a statute similar to § 9459, Comp. Laws 1913, no person can be convicted of murder or manslaughter unless the death is established by direct evidence. An examination of these decisions also shows that the courts of both states considered the term "direct proof" in the statute as synonymous with "direct evidence."

Appellants' counsel contended on reargument that there was no direct proof,—no eyewitnesses who ever saw the child alive,—and that consequently there was no direct evidence of death. A reconsideration of this question leads us to the same conclusion as that reached in the former decision. While there is in the record a great deal of circumstantial evidence bearing upon this question, there is also the direct and positive testimony of the coroner (Dr. Warren) as to the condition disclosed upon the post mortem examination, of certain vital organs, —especially the lungs, the heart, and blood vessels. The coroner's testimony upon these matters was not an opinion; it was direct and positive testimony as to certain physical facts, and it is undisputed that from these physical facts, only one conclusion could be drawn; namely, that the child must have been born alive, and remained alive and had an independent existence for a number of hours.

It is necessary to prove the fact of death by direct evidence. It does not follow, however, that eyewitnesses must be produced who are able to testify that they saw the child alive, provided the child's body carries within itself evidence of the fact of live birth and independent existence.

Suppose the body of a strange child a year old was found dead upon a street in this city to-morrow morning. It is possible that no person could be found who had ever seen the child alive, yet it would be self-evident that it must have been born alive and had an independent existence in order to attain the period of development manifested.

In the case at bar, it is true, the child lived for only a short time, but nevertheless the physical condition described by the coroner as having been found by him upon the post mortem examination was equally competent and direct evidence that the child had been born alive and had had an independent existence for several hours.

It is true, the jury might have disbelieved this evidence and found that the live birth of the child had not been established. But this does not alter the fact that there was direct evidence of certain physical facts tending to show that the child had been born alive. There was, however, also circumstantial evidence tending to establish this fact, and under the court's instructions the verdict might well be predicated upon such circumstantial evidence. Consequently, we are all agreed that the instructions of the trial court last above quoted are erroneous, and that such error under the evidence in this case necessarily must have been prejudicial, and that the case must be reversed and a new trial had.

The other errors assigned may not arise upon another trial, and, hence, need not be considered. We deem it proper to say, however, that a majority of the court as now constituted, while satisfied that there is sufficient evidence to sustain a conviction of Elmer Jones as an accessory, have grave doubts as to the sufficiency of the evidence against him as a principal.

In justice to the learned trial court, we deem it proper to say that the record evinces on his part an impartial and painstaking desire to administer even-handed justice, and it is with regret that we feel compelled to grant a new trial.

Reversed and remanded for a new trial.

ROBINSON, J. I recommend that this action be dismissed. I think the county and state should not be put to any more costs in this case.