# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 192

State of North Dakota,                                            Plaintiff and Appellee

v.

Wyatt Scott Kukert,                                          Defendant and Appellant

## No. 20210079

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Wade L. Webb, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice, in which Chief Justice Jensen, and Justices VandeWalle and Tufte joined, and Justice McEvers concurred in the result.

Renata J. Olafson Selzer, Assistant State's Attorney, Fargo, ND, for plaintiff and appellee.

Elizabeth B. Brainard, Fargo, ND, for defendant and appellant.

**Crothers, Justice.**

[¶1]   Wyatt Kukert appeals from a district court judgment entered after he conditionally pled guilty to gross sexual imposition. Kukert argues the court erred by denying his motions to dismiss and suppress. Kukert claims he did not voluntarily waive his *Miranda* rights, and his statements to law enforcement were not corroborated by other evidence of sexual contact. We affirm.

I

[¶2]   In June 2019, Fargo law enforcement was sent a mobile phone video of Kukert with two six-year-old females, M.S. and K.K. The video showed Kukert sitting on a couch with his erect penis exposed. The video included dialog between Kukert, M.S., and K.K.

[¶3]   Kukert was interviewed for over two-and-one-half hours by Detective Chris Mathson of the Fargo Police Department and Officer Shane Conroy of Homeland Security. Before the interview began, Kukert was detained and was informed of his *Miranda* rights. Kukert stated that after the video ended, M.S. and K.K. put tape on his penis. Kukert also admitted during the interview to having had sexual contact with M.S. on previous occasions. The State charged Kukert with three counts of gross sexual imposition.

[¶4]   In January 2020, Kukert moved to dismiss the charges, arguing the State was relying solely on his uncorroborated statements made during the investigative interview. The district court denied Kukert's motion, finding the video "certainly corroborates many aspects of [Kukert's] confession." The court also found Kukert's confession was sufficiently trustworthy, noting that Kukert was not under any undue stress during the interview.

[¶5]   In June 2020, Kukert moved to suppress his statements to law enforcement, claiming he did not waive his *Miranda* rights during the interview. Kukert also renewed his motion to dismiss.

[¶6]   In support of his motion to suppress, Kukert submitted a report from Dr. Jessica Mugge. Dr. Mugge reviewed Kukert's interview with law enforcement and tested Kukert on his understanding of *Miranda* rights. On the basis of her evaluation, Dr. Mugge concluded:

> "[I]t is a serious question as to whether Mr. Kukert had the capacity to apply his constitutional rights to his particular situation *at the time of the interrogation*, and his responses during the recorded interview failed to show that he appreciated his rights. As such, the manner in which officers assessed his understanding failed to elicit responses from him that clearly demonstrated whether, and to what extent, he appreciated his rights and whether he was truly waiving them."

[¶7]   Dr. Mugge based her conclusion in part on an exchange between Kukert and law enforcement at the beginning of the interview. After reading the *Miranda* warning, Detective Mathson asked whether Kukert had any questions about each of the *Miranda* rights. Kukert responded "no," then added "the only thing I'm curious about is why I'm here." Mathson said, "We'll certainly explain that to you, but I just want to know that you're agreeing to speak with us today and we can hopefully shed some light on why you're here, but we're just making sure you're agreeing to speak with us. Is that okay?" Kukert responded with, "It's better to cooperate and hope for the best . . . than to cause more problems." Mathson stated, "Cooperation goes a long way. We certainly want you to be truthful." Mathson then interrogated Kukert about the mobile phone video.

[¶8]   The district court denied Kukert's motion to suppress. The court found that despite Dr. Mugge's report and testimony on Kukert's waiver of *Miranda* rights, he scored well on the tests measuring his understanding of *Miranda*. The court found that under the totality of the circumstances, law enforcement properly explained *Miranda* and Kukert understood the consequences of waiving his *Miranda* rights. The court also denied Kukert's renewed motion to dismiss, finding there was sufficient corroborating evidence for the case to go to a jury. Kukert entered a conditional guilty plea.

## II

[¶9]   Kukert argues the district court erred by denying his motions to suppress and dismiss.

[¶10] On appeal, a district court's decision on a motion to suppress will not be reversed if, after conflicting testimony is resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the court's findings, and the decision is not contrary to the manifest weight of the evidence. *State v. Rai*, 2019 ND 71, ¶ 5, 924 N.W.2d 410. We recognize the importance of the district court's opportunity to observe the witnesses and assess their credibility, and we accord great deference to its decision in suppression matters. *Id.* Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law. *Id.*

[¶11] This Court's standard of review of a motion to dismiss in a criminal proceeding is the same as our review of a motion to suppress. *See State v. Nice*, 2019 ND 73, ¶ 5, 924 N.W.2d 102; *State v. Thill*, 2005 ND 13, ¶ 6, 691 N.W.2d 230.

## A

[¶12] Kukert claims the district court should have suppressed his statements made during his interview with law enforcement because he did not voluntarily, knowingly, or intelligently waive his *Miranda* rights. Kukert argues Detective Mathson's statement regarding cooperation denied him the opportunity to fully understand his rights.

[¶13] The Fifth Amendment of the United States Constitution and N.D. Const. art. I, § 12, provide that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself." In *Miranda v. Arizona*, 384 U.S. 436, 479 (1966), the United States Supreme Court held a person subjected to custodial interrogation is entitled to four specific warnings to protect the privilege against self-incrimination:

> "He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney,

3

and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."

[¶14] Whether a defendant voluntarily, knowingly, and intelligently waived his or her *Miranda* rights depends on the totality of the circumstances. *State v. Hunter*, 2018 ND 173, ¶ 22, 914 N.W.2d 527. This Court described the focus of the analysis for claims about whether a defendant has waived *Miranda* rights:

> "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived."

*State v. Brickle-Hicks*, 2018 ND 194, ¶ 11, 916 N.W.2d 781 (quoting *State v. Webster*, 2013 ND 119, ¶ 21, 834 N.W.2d 283).

[¶15] Statements to law enforcement may be involuntary even if law enforcement has complied with the *Miranda* requirements. *Hunter*, 2018 ND 173, ¶ 22. We consider the totality of the circumstances and focus on two elements to determine whether statements to law enforcement are voluntary:

> "(1) the characteristics and conditions of the accused at the time of the confession, including age, sex, race, education level, physical and mental condition, and prior experience with police; and (2) the details of the setting in which the confession was obtained, including the duration and conditions of detention, police attitude toward the defendant, and the diverse pressures that sap the accused's powers of resistance or self-control."

*Id.*

[¶16] The district court issued its decision at the conclusion of the hearing on Kukert's motion to suppress. The court stated it had watched the video of law enforcement's interview with Kukert. The court found the interview was "a give and take," and "[law enforcement's] conduct was conversational, the tone

was conversational." The court found Kukert spoke just as much as the officers did and "his answers were clear." The court found Dr. Mugge's testimony was credible and acknowledged her opinion relating to Kukert's ability to understand and waive his *Miranda* rights. However, the court found "in several of the tests he was rather perfect as far as understanding what the *Miranda* rights were." The court concluded:

> "I believe [Kukert] had a requisite level of understanding of the consequences of his decision, that he had a full awareness of the nature of the rights being abandoned, and that he was fully aware of the consequences of the decision to abandon it. He chose to visit with law enforcement.
>
> "That law enforcement talked about cooperation going a long way—there is Eighth Circuit case law, *Simmons vs. Bowersox*, 235 F.3d 1124, [1133 (8th Cir. 2001)]—would be better for him is what law enforcement used there, very similar to the situation here, that doesn't render in and of itself a confession involuntary.
>
> "As a whole, totality of the circumstances, *Miranda* was properly explained and he, Mr. Kukert, did demonstrate his ability to appreciate the consequences of waiving his *Miranda* rights. So the Court . . . [denies] the motion to suppress."

[¶17] "Confessions are not voluntary when a defendant's will is overborne at the time the confession is given." *State v. Murray*, 510 N.W.2d 107, 111 (N.D. 1994). "[S]tatements to the effect that it would be to a suspect's benefit to cooperate are not improperly coercive." *United States v. Ruggles*, 70 F.3d 262, 265 (2d Cir. 1995).

[¶18] Here, the district court found law enforcement properly explained *Miranda* to Kukert. There is no evidence Kukert's will was overborne during the interview. There is sufficient competent evidence supporting the court's findings on Kukert's waiver of *Miranda* and the voluntariness of his statements to law enforcement. The court's decision denying Kukert's motion to suppress is not contrary to the manifest weight of the evidence.

[¶19] Kukert asserts that under the corpus delicti doctrine the district court erred in denying his motion to dismiss. He claims there is no sexual act or contact portrayed in the video, and the State relied solely on his uncorroborated statements to law enforcement to support his convictions.

[¶20] "Corpus delicti" means "body of the crime." Black's Law Dictionary (11th ed. 2019). "The state must be able to prove in a crime involving damage to persons or property that the injury for which the accused confessed did occur, and that some person was criminally responsible for it. These two factors comprise the so-called corpus delicti." *Lufkins v. Leapley*, 965 F.2d 1477, 1482 (8th Cir. 1992) (citing *Wong Sun v. United States*, 371 U.S. 471, 489 n. 15 (1963)). The general rule is "that an accused may not be convicted on his own uncorroborated confession." *Smith v. United States*, 348 U.S. 147, 152 (1954). However, "[t]he evidence establishing the corpus delicti—independent of the accused's extrajudicial admission—need not be conclusive." *Lufkins*, at 1482.

[¶21] This Court has mentioned the corpus delicti doctrine in earlier cases relating to sufficiency of the evidence; however, we have not addressed an argument similar to Kukert's. *See, e.g.*, *Bell v. State*, 2001 ND 188, ¶ 10, 636 N.W.2d 438; *State v. Champagne*, 198 N.W.2d 218, 227 (N.D. 1972); *State v. Gibson*, 284 N.W. 209, 222 (N.D. 1938); *State v. Sogge*, 161 N.W. 1022, 1024 (N.D. 1917) (discussing the history of the common law doctrine).

[¶22] Courts that have addressed arguments similar to Kukert's employ the trustworthiness approach when analyzing whether a confession is sufficiently corroborated:

> "[W]here, as here, there is no tangible evidence of the crime confessed, the Government must introduce substantial independent evidence establishing the reliability or trustworthiness of the defendant's statement.
>
> "One way in which the Government may establish a confession's trustworthiness is to offer independent evidence that bolsters the accuracy of the confession itself, thereby proving the offense through the statements of the accused. This corroborating

evidence need not be sufficient, on its own, to establish the body of the offense beyond a reasonable doubt, or even by a preponderance of the evidence. Rather, corroborative evidence is sufficient if it merely fortifies the truth of the confession without independently establishing the crime charged. The Government thus bears the burden of offering enough evidence in support of the essential facts of a confession to support a jury's inference of their truth. [I]t is required merely that the prosecution produce independent evidence sufficiently supporting the essential admitted facts to justify a jury inference of the truth of the admitted facts or tending to establish the trustworthiness of the confession.

"Under this trustworthiness approach to the corroboration rule, the quantity and type of independent evidence necessary to corroborate a confession depends upon the facts of each case. Corroborative facts may be of any kind, so long as they tend to produce confidence in the truth of the confession. Thus, circumstantial evidence may justify a jury's inference that a defendant's statement is true."

*United States v. Kirk*, 528 F.3d 1102, 1111-12 (8th Cir. 2008) (cleaned up); *State v. Dern*, 362 P.3d 566, 581 (Kan. 2015) (stating "the trustworthiness standard looks to the totality of the circumstances to assess both whether the crime occurred and whether the confession was trustworthy—*i.e.*, reliable"); *State v. Plastow*, 2015 S.D. 100, ¶ 20, 873 N.W.2d 222 ("in cases where the defense has moved to suppress an admission before it has been admitted into evidence, the court may admit the statement upon the State's showing of 'substantial independent evidence which would tend to establish the trustworthiness of the statement'").

[¶23] Analyzing a defendant's statements or confession under the trustworthiness approach appears to be the majority view. *See* 1 McCormick on Evidence § 147(c) (8th ed. 2020); *Dern*, 362 P.3d at 580. Courts prefer this approach for crimes involving inappropriate sexual contact where no physical or forensic evidence is available, and crimes "involving the most vulnerable victims, such as infants, young children, and the mentally infirm." *Dern,* at 579 (quoting *People v. LaRosa*, 2013 CO 2, ¶ 31, 293 P.3d 567); *State v. Mauchley*, 2003 UT 10, ¶¶ 29-30, 67 P.3d 477.

[¶24] Here, the district court found Kukert's statements to law enforcement were trustworthy. The court found the video corroborated Kukert's statements to law enforcement. The court found there was "sufficient trustworthiness shown by the evidence presented [to] the Court to corroborate [Kukert's] confession."

[¶25] Kukert asserts the mobile phone video does not corroborate his statements to law enforcement because there is no sexual contact depicted in the video. The video showed Kukert sitting on a couch with his erect penis exposed. The video included the following dialog between Kukert, K.K., and M.S.:

> K.K.: "Put it away. Put it away."
> Kukert: "Calm down . . . in order for this to work it has to be out."
> M.S.: "You can lay on the ground right here. Do it, K.K."
> K.K.: "I do not know what to do."
> Kukert: "Well then, come here."
> M.S.: "You just sit on it and move your butt."
> K.K.: "God, no."
> M.S.: "That's how he did it to me. I laid down on my tummy and he put his wiener in me. That's how I did it. I did it once. I'm done with it."

In his interview with law enforcement, Kukert stated that after the video ended, K.K. and M.S. put tape on his erect penis. He also admitted to having sexual contact with M.S. on other occasions.

[¶26] The video is substantial independent evidence establishing the trustworthiness of Kukert's statements to law enforcement. Kukert exposed himself to the minor females in the video. That, along with the accompanying dialog, lends credibility to Kukert's statements that he had sexual contact with the minor females.

[¶27] The district court did not err in denying Kukert's motion to dismiss. There is sufficient competent evidence fairly capable of supporting the court's findings, and the court's decision is not contrary to the manifest weight of the evidence.

## III

[¶28] Kukert's remaining arguments are either without merit or unnecessary to our decision. The criminal judgment is affirmed.

[¶29] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Jerod E. Tufte

I concur in the result.
Lisa Fair McEvers