# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2024 ND 114

State of North Dakota,                                    Plaintiff and Appellee

    v.

Jay Kristopher Jelinek,                                  Defendant and Appellant

### No. 20230367

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Lolita G. Hartl Romanick, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR NEW TRIAL.

Opinion of the Court by Jensen, Chief Justice.

Rachel R. Egstad, Assistant State's Attorney, Grand Forks, ND, for plaintiff and appellee; submitted on brief.

Christopher M. Redmann, Bismarck, ND, for defendant and appellant; submitted on brief.

**Jensen, Chief Justice.**

[¶1]    Jay Jelinek appeals from an order denying his motion to suppress evidence and challenges evidentiary rulings made by the district court during trial. Jelinek argues the district court (1) erred in denying his motion to suppress, finding that Jelinek was not subject to an improper seizure prior to his arrest and that the law enforcement officer had reasonable suspicion criminal activity was afoot; (2) erred by denying his N.D.R.Crim.P. 29 motion for an acquittal on count II as the State's only evidence of guilt was Jelinek's own statements; (3) erred in allowing evidence of Jelinek's criminal history to go to the jury, and (4) that his 6th Amendment rights were violated. We affirm in part, reverse in part, and remand for a new trial.

I

[¶2]    A North Dakota Game and Fish Department Warden was patrolling Grand Forks County during deer hunting season. During his patrol, the Warden observed a truck with its headlights on parked off-trail in a field.

[¶3]    The Warden testified he drove into the field toward the truck and parked perpendicular to the truck, leaving the path in front of and behind the truck unobstructed. As the Warden pulled up, he testified, he observed Jelinek, dressed in blaze orange, exit the vehicle and walk toward the woods. He further testified that he observed Jelinek's spouse, also dressed in blaze orange, sitting in the passenger seat of the vehicle. The Warden explained that as he exited his vehicle, and as he was approaching the truck, he said "Hey." The Warden indicated that Jelinek did not appear to hear him and did not turn around, so the Warden yelled "Hey" a bit louder. The Warden explained that Jelinek then turned toward the Warden, at which time the Warden motioned to Jelinek using his hand and asked if Jelinek could come talk to him for a minute. The Warden testified that when Jelinek turned around, the Warden recognized him from prior encounters and explained that he knew that Jelinek's privileges to hunt or assist in any way in hunting were under suspension.

[¶4]    The Warden testified that he asked Jelinek what he was doing, to which Jelinek responded he was replacing batteries in a trail camera. The Warden testified that Jelinek also stated his spouse had a deer tag and he had been sitting in the deer stand with her

1

earlier that day while she was hunting. The Warden further testified that Jelinek briefly left, presumably to continue with replacing the batteries in the trail camera, and the Warden went to speak to Jelinek's spouse.

[¶5] The Warden indicated that Jelinek returned shortly thereafter, and the Warden asked to speak with him in front of his patrol vehicle. The Warden noted that Jelinek said he preferred to sit in his vehicle and talk from there, that Jelinek then returned to his vehicle, and while at the vehicle engaged in a discussion with the Warden. At some point during the conversation, the Warden testified that Jelinek told the Warden he did not want to continue talking, the Warden agreed to end the current conversation, and the two began talking about another matter until Jelinek stopped the conversation, indicating his vehicle was running out of gas. The Warden testified that he left Jelinek and began walking back towards his patrol vehicle.

[¶6] The court found that video taken from the camera on the patrol vehicle confirms the Warden was walking back to his vehicle when Jelinek's truck backed up; the truck's headlights traveled past the Warden's vehicle and then disappeared, indicating Jelinek had driven past the Warden's vehicle. The Warden also testified that Jelinek's truck was not blocked in and he believed the Jelineks could reverse and drive off without the Warden having to move his vehicle.

II

[¶7] Jelinek moved to suppress evidence gathered during his encounter with the Warden. Jelinek contends he was unlawfully seized and the Warden did not have reasonable suspicion that criminal activity was occurring or about to occur. When reviewing a district court's decision on a motion to suppress, we will defer to the court's findings of fact. *State v. Adams*, 2018 ND 18, ¶ 8, 905 N.W.2d 758. Because the court is in a superior position to evaluate credibility and weigh evidence, conflicts in testimony are resolved in favor of affirmance. *Id.* We will affirm the district court "if there is sufficient competent evidence capable of supporting the district court's findings, and if its decision is not contrary to the manifest weight of the evidence." *Id.* (cleaned up).

A

[¶8] The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *State v. Stands*, 2021 ND 46, ¶ 8, 956 N.W.2d 366. "A person alleging his rights have been violated under the Fourth Amendment has an initial burden

2

of establishing a prima facie case of illegal seizure." *State v. Taylor*, 2015 ND 100, ¶ 11, 862 N.W.2d 801. A prima facie case is established if the party bearing the burden of proof presents evidence strong enough, if uncontradicted, to support a finding in his favor. *State v. Cook*, 2020 ND 69, ¶ 10, 940 N.W.2d 605. Once a prima facie case has been established, the burden shifts to the State to justify its actions. *State v. Zacher*, 2015 ND 208, ¶ 7, 868 N.W.2d 847.

[¶9]     A law enforcement officer's "approach to a parked vehicle is not a seizure if the officer inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response." *State v. Langseth*, 492 N.W.2d 298, 300 (N.D. 1992). A casual encounter between an officer and a citizen can become a seizure "if a reasonable person would view the officer's actions—if done by another private citizen—as threatening or offensive." *State v. Boyd*, 2002 ND 203, ¶ 7, 654 N.W.2d 392. A seizure occurs for Fourth Amendment purposes only "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Sayler v. North Dakota Dep't of Transp.*, 2007 ND 165, ¶ 18, 740 N.W.2d 94.

[¶10] Jelinek argues there was a seizure because when the Warden first arrived, he commanded Jelinek to return to speak with him. The district court, relying on the footage from a camera mounted on the Warden's patrol vehicle, found that the Warden did not command Jelinek to return and talk to him. Rather, the court found Jelinek voluntarily engaged in a conversation with the Warden, after which Jelinek freely walked towards the woods to change the batteries in the trail camera. When Jelinek returned, he declined to speak with the Warden in front of his patrol vehicle and instead returned to the driver's seat of his vehicle. A short conversation ensued. Jelinek began questioning the Warden about an unrelated matter and ultimately told the Warden his truck was running out of gas. The Warden told Jelinek he was free to leave and they could discuss the matter later. The district court found that nothing in the video corroborated Jelinek's claim that the Warden was threatening or acting in a manner that restrained Jelinek's movements.

[¶11] Jelinek also argues there was a seizure because the Warden blocked his vehicle's only exit. We have previously recognized that if law enforcement blocks a vehicle in so that the occupant is unable to leave, it may result in a seizure under the Fourth Amendment. *City of W. Fargo v. Medbery*, 2021 ND 81, ¶ 13, 959 N.W.2d 568. A law enforcement officer's "approach to a parked vehicle is not a seizure if the officer inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response." *Langseth*, 492 N.W.2d at 300. The district court found that when

Jelinek informed the Warden he was done talking, the Warden told Jelinek he was free to leave. The court found that the video from the Warden's patrol vehicle clearly showed that Jelinek's vehicle was "not blocked in," that the Warden's vehicle was "parked several feet away and perpendicular to the Jelinek vehicle," and that "the video showed an unobstructed" path for Jelinek to get around and past the Warden's vehicle.

[¶12] The district court was presented with sufficient competent evidence capable of supporting the district court's findings that Jelinek was not unlawfully seized by either the Warden's interaction with Jelinek or the position of the Warden's vehicle, and the findings are not contrary to the manifest weight of the evidence. We affirm the court's denial of the motion to suppress.

B

[¶13] Jelinek also argues the Warden lacked reasonable suspicion for the seizure. The Fourth Amendment is violated by the continued seizure . . . unless law enforcement has reasonable and articulable suspicion that criminal activity is afoot. *State v. Wills*, 2019 ND 176, ¶ 9, 930 N.W.2d 77. However, the Warden did not need reasonable suspicion or probable cause to approach Jelinek's truck and initiate a casual conversation. *Abernathey v. Dep't of Transp.*, 2009 ND 122, ¶ 9, 768 N.W.2d 485. The issue is whether the Warden escalated this "casual encounter" into a seizure by ordering Jelinek "to do something, by demanding a response, or by threatening [him] with a show of authority or command." *Id.* Having concluded the district court did not err in finding that Jelinek was not seized, resolution of this issue is unnecessary for our decision.

III

[¶14] Jelinek argues the district court erred by denying his motion for judgment of acquittal under N.D.R.Crim.P. 29 on count II, because the evidence was insufficient based on the corpus delecti doctrine. He claims the State relied solely on his uncorroborated statements to law enforcement to support his conviction. In particular, he challenges his statements that he was assisting or had assisted his wife in hunting earlier in the day while his hunting license was suspended.

[¶15] "Corpus delicti" means "body of the crime." *State v. Kukert*, 2021 ND 192, ¶ 20, 965 N.W.2d 849 (*citing* to Black's Law Dictionary (11th ed. 2019)). "The state must be able to prove in a crime involving damage to persons or property that the injury for which the accused confessed did occur, and that some person was criminally responsible for it.

4

These two factors comprise the so-called corpus delicti." *Id*. (citing to *Lufkins v. Leapley*, 965 F.2d 1477, 1482 (8th Cir. 1992)). The general rule is that an accused may not be convicted on his uncorroborated confession. *Kukert,* at ¶ 20. However, "[t]he evidence establishing the corpus delicti—independent of the accused's extrajudicial admission— need not be conclusive." *Id.*

[¶16]  The State has not challenged, and the parties have not briefed, the application of the corpus delecti doctrine in cases that do not involve damage to persons or property. Assuming the corpus delecti doctrine applies in this case without deciding whether or not it should apply to cases that do not involve damage to persons or property, we consider Jelinek's argument in the following paragraphs.

[¶17]  In *Kukert*, the Court employed the trustworthiness approach when analyzing whether a confession is sufficiently corroborated:

> [W]here, as here, there is no tangible evidence of the crime confessed, the Government must introduce substantial independent evidence establishing the reliability or trustworthiness of the defendant's statement.
>
> One way in which the Government may establish a confession's trustworthiness is to offer independent evidence that bolsters the accuracy of the confession itself, thereby proving the offense through the statements of the accused. This corroborating evidence need not be sufficient, on its own, to establish the body of the offense beyond a reasonable doubt, or even by a preponderance of the evidence. Rather, corroborative evidence is sufficient if it merely fortifies the truth of the confession without independently establishing the crime charged. The Government thus bears the burden of offering enough evidence in support of the essential facts of a confession to support a jury's inference of their truth. [I]t is required merely that the prosecution produce independent evidence sufficiently supporting the essential admitted facts to justify a jury inference of the truth of the admitted facts or tending to establish the trustworthiness of the confession.
>
> Under this trustworthiness approach to the corroboration rule, the quantity and type of independent evidence necessary to corroborate a confession depends upon the facts of each case. Corroborative facts may be of any kind, so long as they tend to produce confidence in the truth of the confession. Thus, circumstantial evidence may justify a jury's inference that a defendant's statement is true.

*Kukert*, 2021 ND 192, ¶ 22.

[¶18] Here, the dashcam video is substantial independent evidence establishing the trustworthiness of Jelinek's statements to law enforcement. Observing a vehicle parked by a grove of trees in an area that was a frequent place for deer and consequently hunters, seeing Jelinek in blaze orange walking into the woods to replace batteries in a trail camera, observing Jelinek's spouse also dressed in blaze orange along with a weapon used for hunting in the vehicle corroborate Jelinek's statements and admissions made to the Warden upon investigation. These also include admissions made by Jelinek's spouse that they were bow hunting earlier. All of these facts offer enough evidence in support of the essential facts of the statements made to support a jury's inference of their truth and therefore meet the standard set forth in *Kukert*.

[¶19]   The district court did not err in denying Jelinke's Rule 29 motion.

IV

[¶20]   Jelinek argues there was no proof that the crimes were committed intentionally and, thus, the district court erred in not dismissing count I at the preliminary hearing. The charge was presented to the jury, but subsequently dismissed by the district court at the conclusion of the evidentiary phase of the trial. It is unnecessary to decide whether the district court erred when it found sufficient probable cause to bind Jelinek over for trial because that issue became moot when the charges were tried. *See State v. Montplaisir*, 2015 ND 237, ¶ 16, 869 N.W.2d 435.

V

[¶21] Jelinek argues the district court erred in allowing his criminal history to be considered by the jury after count I was dismissed. Count I, Felony Exploitation of Wildlife, required the State to prove Jelinek had intentionally committed five or more Title 20.1 class A offenses within the prior two years. N.D.C.C. § 20.1-01-33. As part of its case in chief, the State introduced exhibits 2 and 3, a criminal judgment and plea agreement from a prior conviction. At the conclusion of the evidence phase of trial, the court dismissed count I. Jelinek then moved to suppress exhibits 2 and 3 from going to the jury, arguing the exhibits were admitted only to support the now dismissed count I and were prejudicial with regard to the jury's consideration of the remaining charges. The court denied Jelinek's motion.

[¶22]   After dismissal of count I and the objection to submitting exhibits 2 and 3 from going to the jury, the court should have considered the relevance of the prior convictions,

the prejudice to Jelinek by allowing prior convictions to be considered by the jury, and if the prejudice outweighs any probative value. Admission of prior convictions is governed by Rule 609(a), N.D.R.Ev., which requires the trial court to weigh the probative value of a prior conviction and its prejudicial effect. *State v. Anderson*, 336 N.W.2d 123, 126 (N.D. 1983). We review the trial court's admission of evidence under this provision under the abuse of discretion standard. *State v. Fuller*, 379 N.W.2d 289, 290 (N.D.1985).

[¶23]   Although the exhibits had been admitted into evidence prior to the district court's dismissal of count I, upon dismissal of count I, the reason for the jury to consider the prior convictions had been eliminated. Jelinek requested the exhibits be withheld from the jury. We hold the court abused its discretion in the subsequent submission of the exhibits to the jury without consideration of their admissibility under N.D.R.Ev. 609.

VI

[¶24]   The district court properly denied Jelinek's motion to suppress after finding Jelinek was not seized during his encounter with the Warden. Following Jelinek's motion, the court erred in allowing the submission of Jelinek's prior convictions to the jury. The remaining issues raised by Jelinek are unnecessary for our resolution of this appeal. We affirm the denial of Jelinek's motion to suppress, affirm the denial of the motion for acquittal, reverse the judgment of conviction, and remand the case for a new trial.

[¶25]   Jon J. Jensen, C.J.
       Daniel J. Crothers
       Lisa Fair McEvers
       Jerod E. Tufte
       Douglas A. Bahr