STATE of North Dakota, Plaintiff and Appellee,

v.

Vernon Ray OLMSTEAD, Defendant and Appellant.

Cr. No. 553.

Supreme Court of North Dakota.

Nov. 19, 1976.

Thomas B. Jelliff, State's Atty., Grand Forks, for plaintiff and appellee State of North Dakota.

David Kessler, Grand Forks, for defendant and appellant.

VOGEL, Justice.

This case presented the trial judge with a direct conflict between the uncorroborated identification of the defendant as her assailant by a rape victim, and an alibi defense supported by five witnesses. The trial judge believed the victim and found the defendant guilty, in a trial without a jury.

The defendant appealed, asserting that the evidence as a matter of law was insufficient to sustain the conviction. We affirm the conviction, but find error in the court's refusal to permit the reinstatement of a withdrawn motion for new trial, and we remand for consideration of that motion.

An earlier appeal, on a motion to release pending this appeal, is reported at 242 N.W.2d 644 (N.D.1976).

The rape victim testified that she was raped in a vacant lot by a young man then unknown to her, on June 27, 1975. She was with him for half an hour, conversed with him, and saw, by the light of the moon, his face, the knife he used to threaten her, and the color of his clothes and boots. About two weeks later, while in a restaurant within a few blocks of the place where the rape occurred, she saw the defendant working in the kitchen and identified him as the rapist. At the trial, her testimony was the only evidence identifying the defendant. A police drawing based upon her description before she identified the defendant shows some similarity to him. A search of the apartment of the defendant and his wife uncovered a steak knife similar to the one described by the victim. but no clothing closely matching her description of what the rapist wore.

The defendant's alibi defense was supported by his wife and by five persons who testified that they had attended a movie and prayer meeting at the Grand Forks Mission with the defendant and his wife the evening of June 27. The meeting lasted until after midnight. All five testified that the defendant and his wife planned to go to a local carnival to hand out religious tracts, and two of the five testified that they accompanied the defendant and his wife to the carnival and that the four "witnessed" there until after 1 a. m. The rape was positively shown to have occurred between midnight and 1 a. m. When the trial judge announced his decision, he pointed out certain inconsistencies between the testimony of the alibi witnesses, such as a difference in their testimony as to the gate they used

to enter the carnival grounds. He deduced that the alibi witnesses were mistaken in their reconstruction of events. (Since the first complaint came about two weeks after the rape, the witnesses had to reconstruct their movements over a period of days or weeks in order to determine what they had been doing on the evening of June 27.)

On the other hand, there were inconsistencies and incongruities in the prosecution's case. For example, the victim testified that the rapist first demanded money from her. Both of the Olmsteads worked, they had no children, and they asserted they were in no particular need of money. She also indicated that the rapist probably was the driver of a yellow Volkswagen which had followed her at a slow speed as she walked along the sidewalk a short time before the rape. The Olmsteads' car was a green Dodge station wagon. The rapist also told the victim that he was wanted by the police. Olmstead had no criminal record prior to the present conviction.

On the question of credibility of witnesses, reading a cold transcript is no substitute for hearing and observing witnesses as they testify. Tones of voice, hesitations, confusion, surprise, and other telltale indications of mental state convey to trial judges and jurors much that is lost to appellate judges. If we were to judge from the cold print, we might decide many cases differently than trial judges do, and this case might be one of them. But, if we decided differently, we would have no assurance that ours was the better decision. We are reluctant to reverse factual findings of juries or trial judges. Appellate courts have stated in many ways, in both civil and criminal cases, their determination to give respect to the findings of trial judges and juries. Sometimes they say they will not reverse if there is substantial evidence to support the verdict [*Kresel v. Giese,* 231 N.W.2d 780, 791 (N.D.1975)]; sometimes they say they will not substitute their judgment for that of the trial court or jury [*State v. Champagne,* 198 N.W.2d 218, 226 (N.D.1972)]; sometimes they speak of viewing the evidence in

the light most favorable to the judgment [*State v. Neset,* 216 N.W.2d 285, 290 (N.D. 1974)]; and sometimes they speak of their great reliance on the findings of the lower court [*In re Estate of Elmer,* 210 N.W.2d 815, 819 (N.D.1973)].

In criminal cases we have repeatedly held that "at the appellate level we do not substitute our judgment for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction." *State v. Kaloustian,* 212 N.W.2d 843, 845 (N.D.1973), and cases cited therein; *State v. Neset,* 216 N.W.2d 285, 287 (N.D.1974).

■ However stated, these rules indicate a recognition that the truth can better be determined in the confrontation of the testimony of witnesses appearing in person than from a transcript of the testimony of those witnesses.

■ Whichever formulation of the rules is followed, we conclude that the determination of the guilt of the defendant in this case was a question for the trial judge and that there was competent and substantial evidence to support it, and, although we are disturbed by the conflict in the evidence, we cannot say that we are left with a definite and firm conviction that a mistake has been committed. *Scheid v. Scheid,* 239 N.W.2d 833 (N.D.1976); *Schwartzenberger v. Hunt Trust Estate,* 244 N.W.2d 711 (N.D.1976); *Square Butte Elec. Coop. v. Hilken,* 244 N.W.2d 519 (N.D.1976).

■ We have held that the uncorroborated testimony of a rape victim is sufficient to establish any or all elements of the crime of rape. *State v. Klein,* 200 N.W.2d 288 (N.D.1972).

■ The defendant makes the alternative request that we find that the trial court abused its discretion in refusing to permit the reinstatement of a motion for new trial. Under the very peculiar conditions that existed in this case, we agree and

remand the case for consideration of the motion for new trial.

At the trial, the defendant was represented by attorney Evan Heustis. After the trial, the defendant's parents retained attorney John Moosbrugger to represent him in the making of a motion for new trial and in appealing. Moosbrugger made a motion for new trial which referred to additional alibi witnesses who could then be produced, and also requested a polygraph examination. Apparently he and the State's Attorney stipulated that the results would be admitted into evidence and the polygraph operator would be produced for examination and cross-examination. After the polygraph tests had been taken, Mr. Moosbrugger moved to withdraw the motion for new trial, apparently for the reason that the defendant was reported by the polygraph operator to have lied. At the moment the court was hearing Mr. Moosbrugger's motion to withdraw the motion for new trial, another attorney, David Kessler, retained by the defendant's wife, was present in the courtroom requesting that the motion not be withdrawn. The court nevertheless granted the motion to withdraw, with the apparent consent of the defendant, who evinced little understanding of the proceedings. Later the same day, the defendant agreed to be represented by Mr. Kessler, who promptly moved to reinstate the motion for new trial. The motion was denied.

A further peculiarity of the proceedings is that the defendant, who had been in the county jail for some time after the conviction, asserted that he had not been allowed to see his wife during that time. Although he stated that he had agreed, until the previous Saturday, to forbid her to see him (the source of the suggestion not being stated), he also said that he had written several letters to her and she had received none.

At the hearing on his motion to reinstate the motion for new trial, Mr. Kessler asserted that he had available expert testimony to show that the polygraph examination of the defendant would be unreliable because of dyslexia, dysgraphia, and dyscalculia due to a serious head injury during childhood.

We believe that the court should not have allowed the withdrawal of the motion for new trial, or, if withdrawn, should have allowed reinstatement when prompt motion for reinstatement was made. The motion to withdraw the motion for new trial was apparently based upon a hearsay report of a polygraph examination, but the motion related to more than the polygraph examination—it also asked for a new trial on other grounds. There was evidence available to the effect that a polygraph examination of the defendant was unreliable. The defendant was confused, and his wife, who had not been allowed to see him, was asking that the motion not be granted. Finally, this is a case where identification by a single eyewitness is involved, and eyewitness identification has been proved many times to be subject to error.

We reverse the order denying leave to reinstate the motion for new trial, and remand for hearing on the same motion for new trial made by Mr. Moosbrugger, subject to the same stipulations made by him and the State's Attorney. The trial court may, of course, in its discretion, allow amendments to the motion or permit other motions to be made.

Remanded for further proceedings consistent with this opinion.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.