2011 ND 217

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Michael Allen NAKVINDA, Defendant and Appellant.**

No. 20110038.

Supreme Court of North Dakota.

Nov. 15, 2011.

Birch P. Burdick, State's Attorney, Fargo, N.D., for plaintiff and appellee.

Mark T. Blumer, Fargo, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1]   Michael Nakvinda appeals from a criminal judgment entered after a jury found him guilty of murder, robbery, burglary, and theft in connection with the death of Philip Gattuso, Jr., and the theft of Gattuso's Porsche Boxster automobile. We affirm the judgment, concluding the State presented sufficient evidence for a jury to find Nakvinda guilty beyond a reasonable doubt.

I

[¶ 2]   In 2009, Gattuso lived in Fargo, North Dakota, with his wife, Valerie Gattuso, and their child.   In March 2009, Valerie Gattuso died after a prolonged illness. Her father, Gene Kirkpatrick, and his family sought custody of the child.   Gattuso resisted.

[¶ 3]   On October 26, 2009, after Gattuso did not pick up his child from daycare, a neighbor found Gattuso dead on the floor of his bedroom.   Gattuso had been killed with a hammer, and personal property was missing, including Gattuso's Porsche Boxster.   The State charged Nakvinda, Kirkpatrick's "handyman," with murder, robbery, burglary, and theft of property.

[¶ 4]   At trial, the State presented evidence to support its theory that Kirkpatrick hired Nakvinda to travel from Nakvinda's home in Oklahoma to kill Gattuso in Fargo.   Law enforcement officers testified they found Gattuso's Porsche Boxster in a storage unit rented by Nakvinda in Oklahoma, and inside the vehicle they found a bloodied hammer that had Gattuso's blood on it.   Kirkpatrick testified he had talked with Nakvinda about killing Gattuso, but contended it had only been talk and they had never reached an agreement.   Kirkpatrick admitted paying Nakvinda $3,000, but contended it had been for handyman services.   The State presented surveillance videos from The Bowler in Fargo showing Nakvinda's pickup truck pulling first an empty U–Haul trailer with Oklahoma license plates near Gattuso's home on October 26, and later the same pickup truck and trailer pulling what appeared to be a tarp-covered automobile on the trailer.   Rest area surveillance videos showed the same pickup truck

and trailer with a tarp-covered vehicle on the trailer arrive at the Glacial Lakes Rest Area in South Dakota, near the North Dakota border. The time and date stamps on The Bowler and Glacial Lakes Rest Area surveillance videos, respectively, showed a difference in time of approximately eight minutes. A region operations coordinator for the South Dakota Department of Transportation testified, however, that all four of the rest area surveillance cameras had not been adjusted for daylight savings time and, therefore, the actual adjusted difference in time would have been approximately sixty-eight minutes. Another rest area surveillance video showed Nakvinda entering the building carrying an empty garbage bag and, minutes later, exiting the building wearing different clothes and carrying a garbage bag that was no longer empty. The State also presented eyewitness testimony from a neighbor of Gattuso's who testified she saw a man loading a Porsche Boxster onto a trailer pulled by a pickup truck in the alleyway behind her home on the morning of October 26.

[¶ 5] In his defense, Nakvinda testified he had never been to Fargo. Instead, he testified he agreed with Kirkpatrick to travel to Wahpeton, North Dakota, to pick up and haul back to Oklahoma a vehicle purchased by Kirkpatrick. Nakvinda testified to receiving $3,000 from Kirkpatrick in exchange for handyman services, and he testified he agreed to pick up Kirkpatrick's vehicle in Wahpeton for $1,500, but Kirkpatrick never paid him.

[¶ 6] Nakvinda testified he stayed at a house in Wahpeton on October 25, and the owner of the house woke Nakvinda on October 26 and informed him he had loaded the vehicle for which Nakvinda had come onto a U–Haul trailer rented by Nakvinda in Oklahoma. The defense theorized the Wahpeton homeowner drove Nakvinda's pickup truck and U–Haul trailer to Fargo on October 26, loaded Kirkpatrick's vehicle on the trailer, and returned to Wahpeton. Nakvinda testified he then drove from Wahpeton to the Glacial Lakes Rest Area to change clothes because he had left Wahpeton in a hurry. Nakvinda also testified he drove his pickup truck and U–Haul trailer back to Oklahoma and placed Kirkpatrick's vehicle in a storage unit rented by Nakvinda. On cross-examination, Nakvinda testified he did not know the name of the person he met in Wahpeton or the address of the house at which he claimed to have stayed.

[¶ 7] In rebuttal, the State used the time difference between the time and date stamps of the respective surveillance videos to discredit Nakvinda's testimony that someone delivered Kirkpatrick's vehicle to him in Wahpeton. Specifically, Detective Paula Ternes of the Fargo Police Department testified it took her sixty-five minutes to travel from The Bowler, near Gattuso's home in Fargo, to the Glacial Lakes Rest Area. The State theorized Nakvinda did not have time to travel anywhere but to the Glacial Lakes Rest Area from Fargo.

[¶ 8] After an eight-day trial that included testimony of more than thirty witnesses and over 300 exhibits, the jury found Nakvinda guilty on all four counts.

[¶ 9] Nakvinda subsequently moved for a new trial under N.D.R.Crim.P. 33, arguing the State did not introduce sufficient evidence to support the guilty verdicts. Central to his argument, Nakvinda claimed the State did not present any physical evidence placing him at the crime scene in Gattuso's home. The district court denied Nakvinda's motion, ruling that although the State did not provide any direct, physical evidence placing Nakvinda in Gattuso's home, the State provided ample circum-

stantial evidence tying Nakvinda to the crimes.

[¶ 10] The district court sentenced Nakvinda to life imprisonment with no possibility of parole for his murder conviction. The court also ordered him to serve twenty years, ten years, and five years, respectively, for his robbery, burglary, and theft convictions, with each sentence to run concurrently. Nakvinda appealed.

[¶ 11] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Nakvinda's appeal is timely under N.D.R.App.P. 4(b). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–28–06.

## II

[¶ 12] Nakvinda argues the State failed to present sufficient evidence at trial to sustain the guilty verdicts. Our standard of review for cases in which a criminal defendant challenges the sufficiency of the evidence is well-established:

> When the sufficiency of evidence to support a criminal conviction is challenged, this Court merely reviews the record to determine if there is competent evidence allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict. When considering insufficiency of the evidence, we will not reweigh conflicting evidence or judge the credibility of witnesses.... A jury may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty.

State v. Kinsella, 2011 ND 88, ¶ 7, 796 N.W.2d 678 (quoting State v. Wanner, 2010 ND 121, ¶ 9, 784 N.W.2d 143). When the verdict is attacked and the evidence is legally sufficient to sustain the verdict, we will not disturb the verdict and judgment even though the trial included conflicting evidence and testimony. Hochstetler v. Graber, 78 N.D. 90, 93, 48 N.W.2d 15, 18 (1951).

[¶ 13] Nakvinda does not specifically argue the district court erred in denying his motion for a new trial. A district court's denial of a motion for a new trial is conclusive unless we conclude the district court abused its discretion. State v. Kraft, 413 N.W.2d 303, 308 (N.D.1987). Rather, Nakvinda argues the State failed to present sufficient evidence to support the jury's verdict. Because Nakvinda has not raised an issue about the denial of his motion for a new trial, we do not consider whether the district court abused its discretion in denying that motion. See Mann v. Zabolotny, 2000 ND 160, ¶ 9, 615 N.W.2d 526.

[¶ 14] Nakvinda specifically argues the evidence is insufficient to support the jury's verdict because the State failed to place him at the crime scene in Gattuso's home in Fargo. He contends he could not be convicted of murder, robbery, burglary, or theft unless the State proved his presence at the crime scene. We begin by outlining the elements of the four crimes for which the jury convicted Nakvinda.

[¶ 15] Section 12.1–16–01(1), N.D.C.C., governing murder, provides, in part:

> A person is guilty of murder, a class AA felony, if the person:
>
> a. Intentionally or knowingly causes the death of another human being;
>
> b. Causes the death of another human being under circumstances manifesting extreme indifference to the value of human life; or
>
> c. Acting ... alone ... commits or attempts to commit ... robbery, bur-

glary ... and, in the course of and in furtherance of such crime or of immediate flight therefrom, the person ... causes the death of any person.

Section 12.1–22–01, N.D.C.C., governing robbery, provides, in part:

1. A person is guilty of robbery if, in the course of committing a theft, he inflicts or attempts to inflict bodily injury upon another or threatens or menaces another with imminent bodily injury.

2. Robbery is a class A felony if the actor ... directs the force of any other dangerous weapon against another.

Sections 12.1–22–02(1) and (2)(b), N.D.C.C., governing burglary, provide:

1. A person is guilty of burglary if he willfully enters or surreptitiously remains in a building or occupied structure, or a separately secured or occupied portion thereof, when at the time the premises are not open to the public and the actor is not licensed, invited, or otherwise privileged to enter or remain as the case may be, with intent to commit a crime therein.

2. Burglary is a class B felony if:

. . . .

b. In effecting entry or while in the premises or in immediate flight therefrom, the actor inflicts or attempts to inflict bodily injury or physical restraint on another, or menaces another with imminent serious bodily injury, or is armed with a ... weapon the possession of which under the circumstances indicates an intent or readiness to inflict serious bodily injury.

Finally, N.D.C.C. § 12.1–23–02(1), governing theft, provides: "A person is guilty of theft if he ... [k]nowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another with intent to deprive the owner thereof." Under N.D.C.C. § 12.1–23–05(2), theft of an automobile or property worth more than $500 is a class C felony.

[¶ 16] Nakvinda testified he rented a U–Haul trailer in Oklahoma for the purpose of picking up a vehicle in North Dakota at Kirkpatrick's request. He further testified he rented a storage unit in Oklahoma under his own name. Nakvinda did not deny his presence in Wahpeton, or that he stopped at the Glacial Lakes Rest Area. Nakvinda contends, despite those facts, no witness, surveillance video, or other evidence specifically placed him at the crime scene in Fargo.

[¶ 17] The record shows that the State did not provide direct evidence of Nakvinda's presence at the crime scene. The State did not show that Nakvinda left any identifying fingerprints on the murder weapon or in Gattuso's home. The State also did not introduce evidence positively linking Nakvinda to any of the tested DNA samples taken from Gattuso's home, person, or stolen personal property. The State did, however, present circumstantial evidence to support the prosecution. "A conviction may be justified on circumstantial evidence alone if the circumstantial evidence has such probative force as to enable the trier of fact to find the defendant guilty beyond a reasonable doubt." *State v. Noorlun*, 2005 ND 189, ¶ 20, 705 N.W.2d 819. "A verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts." *Kinsella*, 2011 ND 88, ¶ 14, 796 N.W.2d 678 (quoting *State v. Bertram*, 2006 ND 10, ¶ 5, 708 N.W.2d 913).

[¶ 18] The State presented evidence at trial showing the location of Gattuso's home within one block of The Bowler in south Fargo. Surveillance videos at

The Bowler showed Nakvinda's pickup truck pulling a U–Haul trailer with Oklahoma license plates near Gattuso's home on October 26, 2009. The videos also showed Nakvinda's pickup truck carrying a tarp-covered vehicle on the U–Haul trailer and turning southbound from 26th Avenue South onto University Drive South at 11:32 a.m. on October 26. Dr. William Massello, who performed Gattuso's autopsy, estimated Gattuso's time of death to be "sometime in the early morning of the 26th or … the early afternoon." Nakvinda rented a U–Haul trailer in Oklahoma under his own name three days before Gattuso's death and returned the trailer one day after his death. Nakvinda also rented a storage unit in Oklahoma under his own name, where law enforcement officers eventually recovered Gattuso's Porsche Boxster. Officers found Gattuso's personal property and the weapon used to kill Gattuso inside the Porsche Boxster. "A defendant's conduct may be considered as circumstantial evidence of the required criminal intent." *Id.* at ¶ 14 (quoting *State v. Sabo*, 2007 ND 193, ¶ 20, 742 N.W.2d 812).

[¶ 19] Additionally, surveillance videos at the Glacial Lakes Rest Area showed Nakvinda's pickup truck entering its parking lot at 12:40 p.m., with the rest area surveillance videos adjusted for daylight savings time, on October 26, pulling a U–Haul trailer with a tarp-covered vehicle on the trailer. The videos showed Nakvinda entering the rest area building carrying an empty garbage bag and, minutes later, exiting the building wearing different clothes and carrying a garbage bag that was no longer empty. The time and date stamps on the surveillance videos depicting Nakvinda's pickup truck and trailer at The Bowler and at the Glacial Lakes Rest Area, respectively, showed a difference in time of approximately sixty-eight minutes after adjusting for daylight savings time.

[¶ 20] Both the State and the defense presented their own witnesses at trial who estimated the travel time between Fargo and the Glacial Lakes Rest Area driving southbound on I–29 at the posted speed limit. Detective Ternes testified it took her approximately sixty-five minutes to get from The Bowler to the Glacial Lakes Rest Area. Private investigator Dean Wawers testified it took him fifty-five minutes to get to the rest area from the intersection of 25th Street South and 32nd Avenue South in Fargo. He also testified that the intersection where he began was "maybe a mile and a quarter" from The Bowler and that the route from The Bowler to the intersection of his starting location contained at least four stoplights.

[¶ 21] Wawers' testimony provided the most advantageous time frame for Nakvinda, although it did not include the time necessary to drive a mile and a quarter through at least four stoplights in south Fargo. Using Wawers' estimated travel time of fifty-five minutes to support Nakvinda's trial testimony that he did not travel to Fargo but rather met a person in Wahpeton provided Nakvinda only about thirteen additional minutes to leave I–29, somewhere between Fargo and the Glacial Lakes Rest Area, and travel elsewhere. Detective Ternes testified Wahpeton is approximately ten and one-half miles east of I–29. The round-trip distance from I–29 to Wahpeton and back to I–29 would, therefore, be approximately twenty-one miles by Detective Ternes's estimation. Wawers testified it took him a total of twenty-eight minutes to travel from I–29 to Wahpeton and then back to I–29, for an average of fourteen minutes each direction. The testimony of Detective Ternes and Wawers, along with the sixty-eight minutes which Nakvinda had to travel from Fargo to the Glacial Lakes Rest Area, weighs heavily against his testimony

that someone else drove his pickup truck and trailer from Fargo to Wahpeton, dropping both off with him in Wahpeton, and then he drove from Wahpeton to the Glacial Lakes Rest Area.

[¶ 22] A review of the record also shows a conflict between Nakvinda's testimony and that of other witnesses. Several witnesses testified they spoke with Nakvinda prior to or shortly after Gattuso's death. The testimony showed Nakvinda's inconsistent stories relating to his travel and his purpose for hauling the Porsche Boxster. An Oklahoma U–Haul rental agent testified Nakvinda told him he would be renting a trailer to tow a Dodge Neon. He told the person from whom he rented storage space in Oklahoma that he was being given, or was buying, a Porsche from a doctor in the Dakotas. He told a person at the Glacial Lakes Rest Area that he had a 1999 Porsche Boxster on his trailer and that he bought it off the Internet from someone in Canada or northern Minnesota. He told a person from whom he rented a storage garage in Oklahoma that he purchased the car in Canada, that he had a buyer for it in California who had left the country for six months, and that he would deliver the car to the buyer when the buyer returned.

[¶ 23] Kirkpatrick and Debbie Baker, a client of Nakvinda's, testified about conversations they had with Nakvinda prior to Gattuso's death. Kirkpatrick testified he had conversations with Nakvinda about killing Gattuso, although Kirkpatrick referenced the conversations as mere "lockerroom talk." Baker testified Nakvinda told her he could take care of the Kirkpatricks' problem with Gattuso and would use a hammer.

[¶ 24] The defense also theorized Gattuso's neighbor did not see Nakvinda in her alleyway, but rather she saw the Wahpeton homeowner driving Nakvinda's pick-up truck. On direct examination, she testified the man had blond or gray hair and wore a baseball cap, although she testified she did not get a good look at the man's face. On cross-examination, Gattuso's neighbor testified to giving a statement to law enforcement officers on October 28, 2009, in which she stated the man she had seen in her alleyway had blond hair and was in his late twenties or early thirties. She also testified Nakvinda did not appear at trial to be blond or to be in his twenties or thirties. Inconsistent testimony at trial does not preclude a finding of guilt. *Kinsella*, 2011 ND 88, ¶ 7, 796 N.W.2d 678 (quoting *Wanner*, 2010 ND 121, ¶ 9, 784 N.W.2d 143).

[¶ 25] The State presented sufficient evidence for a jury to draw a reasonable inference of guilt warranting Nakvinda's convictions. We have repeatedly reinforced the role of the jury and have refrained from usurping its fact-finding function: "This Court does not sit as a 'thirteenth juror' to make independent determinations of credibility of witnesses or other evidentiary weight." *State v. Barendt*, 2007 ND 164, ¶ 21, 740 N.W.2d 87. The truth is better determined during the confrontation of witness testimony at trial than from its transcription. *State v. Olmstead*, 246 N.W.2d 888, 890 (N.D.1976). When judging the credibility of witnesses, "reading a cold transcript is no substitute for hearing and observing witnesses as they testify." *Id.* "Tones of voice, hesitations, confusion, surprise, and other telltale indications of mental state convey to trial judges and jurors much that is lost to appellate judges." *Id.*

[¶ 26] We do not substitute our judgment for that of the fact-finder when there is conflicting evidence "if one of the conflicting inferences reasonably tends to

prove guilt and fairly warrants a conviction." *Id.* (quoting *State v. Kaloustian,* 212 N.W.2d 843, 845 (N.D.1973)). This case is no different. The State provided ample circumstantial evidence placing Nakvinda at Gattuso's home on the morning of October 26, 2009, and tying him to the crimes.

[¶ 27] A review of the record in the light most favorable to the verdict, drawing all reasonable inferences therefrom, shows a jury could have found beyond a reasonable doubt that Nakvinda committed the charged crimes. Therefore, we conclude the State presented sufficient evidence to allow the jury to infer Nakvinda's guilt and to warrant his conviction.

### III

[¶ 28] We affirm the district court judgment.

[¶ 29] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS and MARY MUEHLEN MARING, JJ., concur.

CAROL RONNING KAPSNER, J., concurs in the result.