# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2026 ND 7

State of North Dakota,                                    Plaintiff and Appellee

    v.

Shawnee Lynn Krall,                                    Defendant and Appellant

### No. 20240233

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Stacy J. Louser, Judge.

AFFIRMED.

Opinion of the Court by Fair McEvers, Chief Justice.

Tiffany M. Sorgen, Assistant State's Attorney, Minot, ND, for plaintiff and appellee.

Samuel A. Gereszek, Grand Forks, ND, for defendant and appellant.

**State v. Krall**
**No. 20240233**

**Fair McEvers, Chief Justice.**

[¶1]   Shawnee Krall appeals an amended criminal judgment after a jury found him guilty of intentional or knowing murder of Alice Queirolo. We conclude the State presented sufficient evidence for a jury to find Krall guilty beyond a reasonable doubt. We further conclude the district court did not commit reversible error in rejecting Krall's requested jury instruction on circumstantial evidence. We affirm.

I

[¶2]   In December 2020, Queirolo lived in a house that she owned in Minot, North Dakota. She had two roommates that rented bedrooms from her: Krall began renting a room in the basement in August 2020 and lived there until his arrest in this matter, and the other roommate rented a room in the residence beginning in September 2020.

[¶3]   On December 21, 2020, Queirolo was reported missing to the Minot Police Department after she did not report to work as expected that day. Krall was arrested for the murder of Queirolo, initially charged by citation dated December 22, 2020, and later by information dated June 7, 2021. The State subsequently filed an amended information dated August 29, 2023, charging Krall with intentional or knowing murder under N.D.C.C. § 12.1-16-01(1)(a), or murder under extreme indifference to human life under N.D.C.C. § 12.1-16-01(1)(b).

[¶4]   Before trial, a number of procedural delays occurred in this matter, including an appeal of the district court's order suppressing evidence, *State v. Krall*, 2023 ND 8, ¶ 1, 984 N.W.2d 669 (affirming the district court's order granting a motion to suppress evidence seized from a warrantless search of Krall's motor vehicle, a Ford 500). The district court held a five-day jury trial on the charges against Krall from July 29, 2024, to August 2, 2024.

[¶5]   After the State rested its case, Krall moved the district court for a judgment of acquittal under N.D.R.Crim.P. 29. The court denied Krall's Rule 29 motion.

The jury found Krall guilty of intentional or knowing murder. On February 18, 2025, the district court sentenced Krall to life in prison without the possibility of parole for his murder conviction. Krall appealed.

II

[¶6]   Krall argues the State failed to present sufficient evidence at trial to sustain the jury's verdict finding him guilty of murder because there exists no evidence that he caused the death of Queirolo.

[¶7]   The standard for reviewing evidentiary issues is "deferential and limited." *State v. Foster*, 2019 ND 28, ¶ 10, 921 N.W.2d 454. Our standard of review for a defendant's challenge to the sufficiency of evidence is well-established:

> In an appeal challenging the sufficiency of the evidence, we look only to the evidence and reasonable inferences most favorable to the verdict to ascertain if there is substantial evidence to warrant the conviction. A conviction rests upon insufficient evidence only when, after reviewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder could find the defendant guilty beyond a reasonable doubt. In considering a sufficiency of the evidence claim, we do not weigh conflicting evidence, or judge the credibility of witnesses.

*State v. Clark*, 2015 ND 201, ¶ 8, 868 N.W.2d 363 (quoting *State v. Addai*, 2010 ND 29, ¶ 52, 778 N.W.2d 555). The defendant bears the burden to show "the evidence, when viewed in the light most favorable to the verdict, permits no reasonable inference of guilt." *Foster*, ¶ 11 (quoting *State v. Azure*, 2017 ND 195, ¶ 25, 899 N.W.2d 294). When a defendant attacks the verdict and legally sufficient evidence sustains the verdict, "we will not disturb the verdict and judgment even though the trial included conflicting evidence and testimony." *State v. Nakvinda*, 2011 ND 217, ¶ 12, 807 N.W.2d 204.

[¶8]   "A verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts." *State v. Noorlun*, 2005 ND 189, ¶ 20, 705 N.W.2d 819. "A conviction may be justified on circumstantial evidence alone if the circumstantial evidence has such probative force as to enable the trier of fact to

2

find the defendant guilty beyond a reasonable doubt." *Id.*; *see also Foster*, 2019 ND 28, ¶ 11; *Nakvinda*, 2011 ND 217, ¶ 17. "[A] jury may find a defendant guilty even though evidence exists which, if believed, could lead to a not guilty verdict." *Noorlun*, ¶ 20. "A defendant's conduct may be considered as circumstantial evidence of the required criminal intent." *State v. Sabo*, 2007 ND 193, ¶ 20, 742 N.W.2d 812 (citing *State v. Olson*, 552 N.W.2d 362, 364 (N.D. 1996)). "[C]ircumstantial evidence is often the only way to prove criminal intent." *Foster*, ¶ 11 (quoting *Sabo*, ¶ 20).

[¶9]    The jury convicted Krall of knowing and intentional murder. Section 12.1-16-01(1), N.D.C.C., governs murder, providing in part:

> A person is guilty of murder, a class AA felony, if the person:
>     a. Intentionally or knowingly causes the death of another human being; . . .

Under section 12.1-02-02(1)(a) and (b), respectively, "a person engages in conduct: . . . '[i]ntentionally' if, when he engages in the conduct, it is his purpose to do so," and "'knowingly' if, when he engages in the conduct, he knows or has a firm belief, unaccompanied by substantial doubt, that he is doing so, whether or not it is his purpose to do so."

[¶10] The district court's jury instructions track the statutory language, providing: "A person who intentionally or knowingly causes the death of another human being is guilty of murder." The instructions then provided the "essential elements" for intentional or knowing murder:

> The State's burden of proof is satisfied if the evidence shows, beyond a reasonable doubt, the following essential elements of the offense charged:
>     1. That on or about December 20, 2020, in Ward County, North Dakota;
>     2. The Defendant, Shawnee Lynn Krall;
>     3. Intentionally or knowingly; and
>     4. Caused the death of Alice Queirolo, a human being.

The instructions further provided the statutory definitions for both "[i]ntentionally" and "[k]nowingly."

3

[¶11] Under N.D.C.C. § 12.1-01-03(1), "[n]o person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt." The district court's jury instruction on "proof beyond a reasonable doubt," stated:

> The State must prove all of the essential elements of the crime charged by proof beyond a reasonable doubt. In other words, if you have a reasonable doubt that the defendant committed the crime charged, then you must find the defendant not guilty.
> The State is not required to prove guilt beyond all doubt, but beyond a reasonable doubt.
> You should find the defendant guilty only if you have a firm and abiding conviction of the defendant's guilt based on a full and fair consideration of the evidence presented in the case and not from any other source.

[¶12] Krall argues that, due to the district court's order suppressing evidence, the jury was not presented any evidence at trial obtained as a result of the warrantless search of Krall's car—including any mention of the victim's body, the fact she was deceased, and the results of the autopsy—to show manner of death or evidence on the body that would have shown who might have placed her body in the car's trunk. Krall asserts the jury was left with evidence that the victim, a medically vulnerable adult, was reported missing and Krall may have been the last to see her, although, he asserts, the exact time she went missing cannot be established.

[¶13] Krall concedes that while "the jury could arguably believe" Queirolo may be deceased given the circumstantial evidence the "victim completely dropp[ed] out of contact and fail[ed] to show up for work," he nevertheless argues the circumstantial evidence establishing her death does not "tie Krall to that death, other than he was her roommate, and he may have been home during the time she went missing." He asserts although it was argued to the jury that the surveillance camera footage in the area of their residence did not show Queirolo leaving, other forms of entry and exit were "admittedly" not on camera.

[¶14] Krall argues the victim's actual death was "circumstantially debatable"; the jury was never presented evidence of the victim's manner of death or how

she died; and the jury, therefore, could not logically conclude Krall acted intentionally or knowingly to cause that death. He argues there is no reasonable inference and no rational fact finder could conclude beyond a reasonable doubt that Krall, or anyone, intentionally or knowingly caused Queirolo's death.

[¶15] The State, however, responds that it presented legally sufficient evidence at trial to sustain the jury's verdict of guilty on the charge of murder. Citing *State v. Kukert*, the State argues under the corpus delicti doctrine there is no requirement a dead body be produced in a murder trial to convict the defendant. 2021 ND 192, ¶ 20, 965 N.W.2d 849 ("The state must be able to prove in a crime involving damage to persons or property that the injury for which the accused confessed did occur, and that some person was criminally responsible for it. These two factors comprise the so-called corpus delicti." (quoting *Lufkins v. Leapley*, 965 F.2d 1477, 1482 (8th Cir. 1992))); *see also United States v. Wilson*, 135 F.3d 291, 298 n.4 (4th Cir. 1998) (stating "[t]he corpus delicti for murder is (1) a death (2) by unlawful conduct"). The State asserts it had to prove at trial that Queirolo was dead and Krall was the one who caused her death intentionally or knowingly. The State further contends in a circumstantial case of murder, there must be proof of the victim's death, "such as a lengthy disappearance or extreme loss of blood," and "the inference of death must have a reasonable basis in the facts." *See Wilson*, 135 F.3d at 298 n.4.

[¶16] A review of the record shows the State presented evidence at trial about Queirolo's disappearance, indicating that such absences without contacting friends or family are out of character. Queirolo's brother, sister, and mother testified at trial. Queirolo was diagnosed with a brain tumor after graduating from college and had undergone surgery to debulk the tumor and rehabilitation treatment; she also had a shunt placed to drain fluid from her brain. About one year later, Queirolo suffered a shunt failure and was found unresponsive in her home. Queirolo later moved to Minot in early 2020 to continue working as a civil engineer.

[¶17] Because of the prior shunt failure, Queirolo arranged with her mother to check in daily and with her coworkers to check on her if she did not come to work. Her mother testified Queirolo was looking forward to further surgery to

5

debulk the brain tumor, but that it had been postponed due to Covid restrictions since the procedure was nonemergency and not immediately necessary. Testimony showed Queirolo was committed to her career and independence, was regimented and disciplined, took ownership of her health issues, made her health a priority, and cared for her family and her dog. Her mother's testimony showed Queirolo was close with her parents and siblings, her family had had no contact from Queirolo in the nearly four years since her disappearance, she no longer owned her house as of trial, her vehicle had been returned to the dealership, and her dog was living with her family in Oregon.

[¶18] The record shows that Queirolo previously had daily contact with her mother, regular contact with her siblings, and holiday contact with the entire family; that she disappeared without telling anyone; and that she left behind important personal belongings and her dog. The State contends it is reasonably inferred from the evidence that had Queirolo had another medical shunt failure, she would have been located; and evidence of Queirolo's habits and personality showed that she would not have disappeared voluntarily, that she failed to contact the expected people if she were travelling, and that she left behind needed and significant items. The State also contends evidence of Queirolo's continued absence indicates "a death resulted from the criminal agency of another," and, after nearly four years, no trace of Queirolo was found to indicate "she was alive or that her manner of death was anything other than homicide."

[¶19] The State presented evidence Queirolo communicated with people, including her family and roommates, via text message or using a social media video messaging application. The State presented a video message that Queirolo recorded at her residence and sent to her mother on December 20, 2020, in which Queirolo discussed the upcoming holiday and her plans to go into the office to catch up on paperwork. The State presented evidence that Queirolo's last outgoing communication was a text message of an emoji to her mother at 6:18 a.m. on December 21, 2020, which her mother testified was part of their daily contact as reassurance for Queirolo to let her mother know she was up, the shunt was working, and she was okay.

[¶20] A coworker testified that Queirolo was a good coworker—soft-spoken, kind, and reliable—and that she had told the office about her medical complications and if she did not show up for work, assume she was having a medical emergency and come looking for her. The coworker testified that on December 21, 2020, around 1 p.m., he went to Queirolo's home after being asked by his supervisors to see if she was there. He testified that after knocking repeatedly on her house's front door, there was no answer and he called police for a welfare check. He testified he met two officers when they arrived at the house, summarized what was going on, and walked to the back of the garage with one officer confirming Queirolo's vehicle was there.

[¶21] The State presented evidence from a Minot police officer who conducted the initial welfare check at Queirolo's residence. After finding the front door locked and Queirolo's vehicle in the garage, the officer made entry into the house. Queirolo was not found in the home, but the officer observed a calendar on the wall, and a candle burning in the kitchen next to Queirolo's phone. The officer blew out the candle, left a note, and exited shutting the door she had entered. The officer testified she attempted another welfare check later in the day, during which she observed Krall's vehicle in the driveway, ran the vehicle's plate, and encountered Krall in the backyard. The officer testified that when she asked about Queirolo's whereabouts, Krall claimed he had not seen her, that he worked night shifts and she worked day shifts, and that it had been about two days since he last saw Queirolo. The officer testified that Krall did not initially offer to call or help look for her and Krall refused the officer access to the residence when asked to see Queirolo's calendar, but that he brought the calendar out to her, which had nothing scheduled for that day.

[¶22] Law enforcement enlisted Krall's probation officer's assistance and conducted a search of the residence on the evening of December 21, 2020. Queirolo was not found, but her electronics including her cell phone and tablet were seized to determine her last communications. A law enforcement officer, who stayed outside with Krall, testified Krall could not really tell him when he last saw Queirolo and attempted to deflect law enforcement towards the other roommate. Evidence was presented at trial, however, showing the other roommate was out of the state. The State presented evidence that when law

enforcement attempted to have Krall come to the police station to give a statement, Krall refused and hung up on the officer. Law enforcement returned to the residence that evening, but Krall did not answer the door despite repeated, "full fist[ed]" knocking and announcing. Krall's probation officer authorized another search on December 22, 2020, during which Krall remained outside in an officer's vehicle. Krall's cell phones were located in the residence, seized, and subsequently searched.

[¶23] The record shows Krall had been employed at a hotel for a few weeks as a night auditor at the time of Queirolo's disappearance. The hotel's general manager from that time testified regarding Krall's work schedule and security video provided from the hotel. Krall worked the overnight shift at the hotel, getting off work at approximately 7 a.m. on December 20, 2020, and he was observed on security video leaving the hotel following his shift and getting into a greenish Ford 500 sedan.

[¶24] The State presented apartment surveillance video for a 36-hour period surrounding Queirolo's disappearance, which captures the portion of the garage of Queirolo's residence facing the alley behind the apartments, showing the garage's three stalls and the comings and goings of vehicles to the residence. The State presented a timeline of the significant events captured on the video, showing the last time Queirolo's vehicle pulled into her garage stall was on December 20, 2020, at 4:24 p.m. The timeline further shows on December 21, 2020, at 8:35 a.m., Krall is observed pulling up in the greenish Ford, attempting to manually move a brown Pontiac parked across the center and right-hand stalls but then uses the Ford to push the Pontiac, and backing the Ford into the right-hand stall and closing the door. At 9:26 a.m., Krall is observed opening the overhead garage door, driving the Ford out, and closing the door; manually pushing the Pontiac to its approximate original location, then driving away in the Ford. At 12:49 p.m., Krall is observed getting out of the front passenger seat of a black Jeep, doing something under the Pontiac's hood, and returning to the Jeep's front passenger seat, which drives away at 12:56 p.m. Three minutes later, at 12:59 p.m., a white truck driven by Queirolo's coworker pulls up and parks. At 1:40 p.m., the coworker is observed at Queirolo's garage stall with a Minot

8

police officer. The State further presented at trial video clips and screen shots for these events.

[¶25] The record therefore shows the State's timeline setting forth Queirolo's last known whereabouts, at her residence on December 21, 2020, including Queirolo's video message to her mother on December 20, 2020, before the victim left for work that day; the apartments' surveillance video showing Queirolo's vehicle leaving, returning, and not leaving again once she returned at 4:24 p.m. on December 20, 2020; and Queirolo's final text message to her mother at 6:18 a.m. on December 21, 2020.

[¶26] The record also shows the State's timeline for Krall's whereabouts, including his work schedule and the hotel's surveillance video, showing Krall getting off work and leaving, and placing Krall with the greenish Ford 500; and the apartments' surveillance video, showing Krall's comings and goings with the Ford, including moving a Pontiac from in front of his garage stall, pulling the Ford into the stall, closing the overhead door, and pulling the Ford out of that stall and moving the Pontiac back about 49 minutes later. The State further presented evidence showing that Krall arranged to leave the Ford at Zachary Barnett's property, stating he would pick it up after Christmas; Krall did not leave the keys with Barnett; and the Ford was left locked at the property.

[¶27] The State presented evidence of Krall's behavior surrounding the victim's disappearance. Law enforcement testimony and other evidence showed Krall being uncooperative; refusing to assist an officer with a welfare check on the victim or provide a statement on the disappearance; showing a lack of concern for Queirolo's well-being or whereabouts; and deflecting interest toward the other roommate, who was out of state at the time of the disappearance. The State also presented evidence of Krall's five video messages sent to Queirolo the day before she went missing, the last one of which the State describes as "particularly chilling," in that Krall's language, demeanor, and tone established his motive—that he felt disrespected, and he was not going to put up with it. Law enforcement testified regarding Queirolo's cell phone activity that confirmed the outgoing text message to Queirolo's mother at 6:18 a.m. on December 21, 2020, that her phone was last unlocked at 8:14 a.m. on December 21, 2020, and that the

9

phone was not accessed or unlocked again until around 6:00 p.m. when it was in the possession of Minot law enforcement.

[¶28] Additionally, the State presented testimony at trial from a Minot detective who interviewed Julian Williams, after Williams had reached out to the Ward County state's attorney's office about information he had on Krall and several other inmates. Williams was housed with Krall in the same jail pod for about a month. Williams testified at trial that Krall had a conversation with him, in which Krall told him that he had raped a girl, and because she was going to tell, he killed her. Williams provided information to law enforcement on other inmates in the same pod, which law enforcement knew to be accurate and provided confidence in Williams's information.

[¶29] The State acknowledges the general rule is "an accused may not be convicted on his own uncorroborated confession," *see Kukert*, 2021 ND 192, ¶ 20 (quoting *Smith v. United States*, 348 U.S. 147, 152 (1954)); but that, "[t]he evidence establishing the corpus delicti—independent of the accused's extrajudicial admission—need not be conclusive." *Id.* (quoting *Lufkins*, 965 F.2d at 1482). The State contends it put forth the independent factual circumstances that sufficiently corroborated the circumstances surrounding Krall's confession, which was given to another inmate rather than to law enforcement. We agree that evidence at trial independent of the defendant's confession reasonably tends to prove Krall committed the charged offense.

[¶30] On our review, the State presented sufficient evidence for a jury to draw a reasonable inference of guilt to support a finding Krall knowingly or intentionally caused the death of Queirolo. As this Court has explained:

> We have repeatedly reinforced the role of the jury and have refrained from usurping its fact-finding function: "This Court does not sit as a 'thirteenth juror' to make independent determinations of credibility of witnesses or other evidentiary weight." *State v. Barendt*, 2007 ND 164, ¶ 21, 740 N.W.2d 87. The truth is better determined during the confrontation of witness testimony at trial than from its transcription. *State v. Olmstead*, 246 N.W.2d 888, 890 (N.D. 1976). When judging the credibility of witnesses, "reading a cold transcript is no substitute for hearing and observing witnesses

10

as they testify." *Id.* "Tones of voice, hesitations, confusion, surprise, and other telltale indications of mental state convey to trial judges and jurors much that is lost to appellate judges." *Id.*

*Nakvinda*, 2011 ND 217, ¶ 25. "We do not substitute our judgment for that of the fact-finder when there is conflicting evidence 'if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction.'" *Id.* ¶ 26 (quoting *Olmstead*, at 890).

[¶31] Viewing the evidence in the record in the light most favorable to the verdict, and drawing all reasonable inferences therefrom, Krall has not met his burden on appeal to show the evidence presented at trial reveals no reasonable inference of guilt. We, therefore, conclude the State presented sufficient evidence to allow the jury to infer Krall's guilt and to warrant his conviction.

III

[¶32] Krall argues the district court erred by rejecting the defense's requested jury instruction.

[¶33] "Jury instructions are fully reviewable on appeal." *State v. Landsberger*, 2025 ND 108, ¶ 4, 22 N.W.3d 722 (citation omitted). We have explained:

> Jury instructions must correctly and adequately inform the jury of the applicable law and must not mislead or confuse the jury. We view the instructions as a whole to determine if they correctly and adequately inform the jury. A court errs if it refuses to instruct the jury on an issue that has been adequately raised, but the court may refuse to give an instruction that is irrelevant or inapplicable.

*State v. Tompkins*, 2023 ND 61, ¶ 11, 988 N.W.2d 556 (quoting *State v. Pulkrabek*, 2017 ND 203, ¶ 6, 900 N.W.2d 798). Moreover, "[s]electing and considering only a part of the instructions is not proper." *State v. Schneider*, 550 N.W.2d 405, 407 (N.D. 1996); *see also City of Minot v. Rubbelke*, 456 N.W.2d 511, 513 (N.D. 1990) ("Selecting only a part of the instructions without considering the jury instructions as a whole is not proper because it can result in erroneous and misleading inferences.").

11

[¶34] A district court "is not required to instruct the jury in the exact language sought by a party if the instructions are not misleading or confusing, and if they fairly advise the jury of the law on the essential issues of the case." *State v. Bauer*, 2010 ND 109, ¶ 10, 783 N.W.2d 21 (quoting *State v. Zajac*, 2009 ND 119, ¶ 12, 767 N.W.2d 825); *see also City of Bismarck v. King*, 2019 ND 74, ¶ 6, 924 N.W.2d 137 (stating a court is not required to give instructions using the specific language requested and may refuse to give a requested instruction when it is irrelevant or does not apply). We review the evidence in a light most favorable to the defendant to determine whether there is sufficient evidence to support a jury instruction. *Bauer*, ¶ 10. An error in a jury instruction provides grounds for reversal only when the instructions as a whole are erroneous, relate to a central subject in the case, and affect the defendant's substantial right. *Landsberger*, 2025 ND 108, ¶ 4; *Bauer*, ¶ 10.

[¶35] "To preserve an issue concerning jury instructions for review, a defendant must request an instruction as required by N.D.R.Crim.P. 30(a) or object to an instruction as required by N.D.R.Crim.P. 30(c)." *Tompkins*, 2023 ND 61, ¶ 8 (quoting *State v. Roberts*, 2021 ND 235, ¶ 11, 968 N.W.2d 183). Rule 30(c)(1) requires a party to object to jury instructions on the record and state distinctly the matter objected to and the grounds of the objection. Here, Krall complied with Rule 30(a) and (c)(1). Krall requested alternative jury instructions on circumstantial evidence, based in part on this Court's language in *State v. Dymowski*, 458 N.W.2d 490, 499 (N.D. 1990). In *Dymowski*, this Court, in addressing the sufficiency of the evidence, previously set forth the following rules in a circumstantial evidence case:

> 1. A verdict based upon circumstantial evidence carries the same presumption of correctness as other verdicts and will not be disturbed on appeal unless it is unwarranted.
> 2. A conviction may be justified on circumstantial evidence alone if it is of such probative force as to enable the trier of fact to conclude that the defendant is guilty beyond a reasonable doubt.
> 3. *At the trial level, circumstantial evidence must be conclusive and must exclude every reasonable hypothesis of innocence.*
> 4. The role of the appellate court is merely to review the record and determine if there is competent evidence that allowed the jury to

12

draw an inference reasonably tending to prove guilt and fairly warranting a conviction.

5. On an appeal challenging the sufficiency of the evidence, the defendant must show that the evidence, when viewed in the light most favorable to the verdict, reveals no reasonable inferences of guilt. We will reverse the decision of the trier of fact only if the record presents no substantial evidence to support the verdict.

458 N.W.2d at 499 (emphasis added) (quoting *State v. Matuska*, 379 N.W.2d 273, 275 (N.D. 1985)); *see also State v. Ohnstad*, 359 N.W.2d 827 (N.D. 1984); *State v. Lawenstein*, 346 N.W.2d 292 (N.D. 1984); *State v. Olson*, 290 N.W.2d 664 (N.D. 1980); *State v. McMorrow*, 286 N.W.2d 284 (N.D. 1979); *State v. Allen*, 237 N.W.2d 154 (N.D. 1975); *State v. Carroll*, 123 N.W.2d 659 (N.D. 1963).

[¶36] Specifically, Krall proposed language from a former pattern jury instruction, requesting the last paragraph of the current jury instruction, N.D.J.I.-Criminal K-5.16, be modified, as follows:

> ~~The law makes no distinction between direct and circumstantial evidence.~~ You should give all evidence the weight and value you believe it is entitled to receive. A conviction may be justified on circumstantial evidence alone if:
> 1.  the circumstantial evidence has such probative force as to enable you to find the Defendant guilty beyond a reasonable doubt, and
> 2.  *the circumstantial evidence is conclusive and excludes every reasonable hypothesis of innocence.*

(Emphasis added.) Alternatively, Krall requested a different explanation of direct and circumstantial evidence:

> A fact can be proved by either direct evidence or circumstantial evidence, or by both.
> If an eyewitness testified about what the witness saw, that is an example of direct evidence. If the ground is bare when you go to sleep but is covered by a blanket of snow when you awake, this is circumstantial evidence that it snowed while you were asleep.
> A person can be convicted on circumstantial evidence alone if the circumstantial evidence is consistent. If one piece of circumstantial evidence contradicts another piece of circumstantial

13

evidence, the circumstantial evidence is not consistent. You can convict a person on circumstantial evidence alone *if the circumstances proved exclude every reasonable theory except that the accused is guilty*.

(Emphasis added.) The district court denied Krall's requested instructions and ultimately gave the jury the following instruction on "direct and circumstantial evidence," based on pattern instruction K-5.16:

> A fact can be proved by either direct or circumstantial evidence, or by both.
> If an eyewitness testifies about what the witness saw, that is an example of direct evidence.
> If the ground is bare when you go to sleep but is covered with a blanket of snow when you awake, this is circumstantial evidence, that it snowed while you were asleep.
> The law makes no distinction between direct and circumstantial evidence. You should give all evidence the weight and value you believe it is entitled to receive. A conviction may be based on circumstantial evidence alone if the circumstantial evidence alone has such probative force as to enable you to find the defendant guilty beyond a reasonable doubt.

[¶37] Krall argues the pattern jury instruction's language— "[a] conviction may be justified on circumstantial evidence alone if it is of such probative force as to enable the trier of fact to conclude that the defendant is guilty beyond a reasonable doubt"—is an "inaccurate instruction" under the defense's theory in this case, which argued "there are any number of reasonable hypotheses that can explain the victim's death that conclude the defendant is innocent." He contends *Dymowski* has never been overruled, the pattern instruction does not exclude the other "valuable and instructive" rules laid out in *Dymowski*, and the requested "exclude every reasonable hypothesis" instruction is more applicable to instruct the jury in this case.

[¶38] Krall contends under the defense's theory—that the victim's death could be a result of any number of factors—the jury should have been instructed to "exclude every reasonable hypothesis of her death" before finding the defendant guilty by circumstantial evidence of intentional or knowing murder. He argues the district court erred when it "robotically stuck" to the pattern instruction on

14

circumstantial evidence rather than "properly instructing" the jury with a "valid rule from the exact same case law as the pattern instruction."

[¶39] The State argues the district court did not err in denying the requested instruction on circumstantial evidence. The State contends the court listened to counsels' arguments and provided a detailed and thoughtful analysis. The State argues the pattern jury instruction is not a misrepresentation of the law and is a fair and accurate representation of case law.

[¶40] Here, in rejecting Krall's requested instructions, the district court correctly noted the pattern jury instructions are not binding, but concluded the pattern instruction on circumstantial evidence "is a fair and accurate representation of not only case law, but how direct and circumstantial evidence is to be contemplated." We have explained that "[t]he North Dakota Pattern Jury Instructions are published as a guide by the State Bar Association, in conjunction with the North Dakota Pattern Jury Instruction Commission." *Bauer*, 2010 ND 109, ¶ 14. "The pattern jury instructions are not controlling law, and are published with the caution that they are 'neither a restatement nor an encyclopedia of the prevailing law.'" *Id.* (quoting *State v. Johnson*, 2001 ND 184, ¶ 7, 636 N.W.2d 391). We therefore review whether the district court erred in rejecting Krall's requested instructions and in giving pattern instruction K-5.16 regarding the jury's use of direct and circumstantial evidence.

[¶41] We recently considered *State v. Houle*, 2022 ND 96, ¶¶ 5-7, 974 N.W.2d 401, in which the district court had instructed the jury using pattern instruction K-5.16. In *Houle*, the court included the pattern instruction's language after both the defendant and the State requested pattern instruction K-5.16 before trial. *Id.* ¶ 3. On appeal, the defendant argued the court failed to properly instruct the jury and affected his substantial rights when it did not include specified language in the given instruction on direct and circumstantial evidence, referred to therein as the "exclude every reasonable theory" instruction. *Id.* ¶¶ 5-6. We note this instruction's language is identical to the last paragraph of Krall's proposed alternate instruction in this case. As we discussed, the State in *Houle* responded that this instruction is disfavored:

The State argues Houle's asserted "exclude every reasonable theory" instruction is disfavored and there was no error in the jury instructions as given, relying in part on *Holland v. United States*, 348 U.S. 121 (1954). There, the petitioners claimed the jury instructions were erroneous where the trial court refused "to instruct that where the Government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt." *Id.* at 139. The United States Supreme Court stated, "There is some support for this type of instruction in the lower court decisions, but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect." *Id.* at 139-40 (internal citations omitted). The Court concluded that circumstantial evidence "is intrinsically no different from testimonial evidence," and if the jury finds the defendant guilty beyond a reasonable doubt, "we can require no more." *Id.* at 140.

*Id.* ¶ 6. We declined to address both parties' arguments on appeal. *Id.* ¶ 7. We held Houle invited the alleged error when he requested the pattern instruction on circumstantial evidence before trial, and waived any alleged error when he did not object or request any additional instructions at trial but agreed to the jury instructions. *Id.* Further, Houle conceded any alleged error was not constitutional in nature. *Id.*

[¶42] We note the *Houle* case for its discussion of *Holland*, in which the United States Supreme Court rejected an "exclude every reasonable hypothesis" instruction, at least for federal courts, stating "the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect." *Holland*, 348 U.S. at 139-40; *see also Jackson v. Virginia*, 443 U.S. 307, 326 (1979) (declining to adopt the theory "the prosecution was under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt" that was rejected in *Holland*). The issue is now properly before us.

[¶43] While not cited or discussed by Krall, we acknowledge this Court's earlier decisions have held jury instructions on circumstantial evidence, with language similar to the instructions requested by Krall, had correctly stated the law and did not constitute prejudicial error. *See, e.g.*, *State v. Steele*, 211 N.W.2d 855, 866-

67 (N.D. 1973) (discussing *State v. Champagne*, 198 N.W.2d 218, 229 (N.D. 1972); *State v. Tucker*, 224 N.W. 878, 883 (N.D. 1929)). Nevertheless, the district court's jury instruction on circumstantial evidence in this case is also supported by recent precedent and correctly states the law. *See, e.g.*, *Foster*, 2019 ND 28, ¶ 11; *State v. Crissler*, 2017 ND 249, ¶ 10, 902 N.W.2d 925; *State v. Rourke*, 2017 ND 102, ¶ 6, 893 N.W.2d 176; *Nakvinda*, 2011 ND 217, ¶ 17; *State v. Dahl*, 2010 ND 108, ¶ 17, 783 N.W.2d 41; *Noorlun*, 2005 ND 189, ¶ 20. The court's instructions here further instructed the jury on the State's burden to prove the essential elements of the crime charged by proof beyond a reasonable doubt. *See Johnson*, 2001 ND 184, ¶ 13 ("We cannot imagine an error more fundamental than incorrectly instructing the jury on the burden of proof."); *Schneider*, 550 N.W.2d at 407 ("It is well established that a criminal defendant cannot be convicted of a crime 'except upon proof beyond a reasonable doubt' of every element of the crime charged." (quoting *In Re Winship*, 397 U.S. 358, 364 (1970))). We agree with the United States Supreme Court that "[t]here is some support for this type of instruction . . . but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect." *Holland*, 348 U.S. at 139-40. To the extent our prior decisions hold otherwise, we believe they were incorrect, and we explicitly overrule them.

[¶44] On this record, we do not agree the district court "robotically stuck" with the pattern instruction. The record shows the court allowed the parties to present arguments on the competing circumstantial evidence instructions, considered relevant case law in its analysis, and made a reasoned decision to use the pattern instruction based on current case law. The court's jury instructions, viewed as a whole, are not misleading or confusing and they fairly advised the jury of the law on the essential elements of the case. *See Bauer*, 2010 ND 109, ¶ 10.

[¶45] We hold that the jury instructions in this case, viewed as a whole, are not erroneous and the district court's instruction on circumstantial evidence comports with current case law. We conclude the district court did not commit reversible error either in denying Krall's requested instructions on circumstantial evidence or in giving the jury the pattern instruction on circumstantial evidence.

## IV

[¶46] We affirm the district court's amended criminal judgment.

[¶47] Lisa Fair McEvers, C.J.
Daniel J. Crothers
Jerod E. Tufte
Jon J. Jensen
Douglas A. Bahr